CITY OF WEST HAVEN *v.* IMPACT ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, JS.

Argued November 1, 1977—decision released January 3, 1978

*Peter L. Truebner,* for the appellant (defendant Connecticut Laborers' Pension Fund).

*Charles A. Sherwood,* for the appellant (defendant Phyllis', Incorporated).

*Stuart Bear,* with whom, on the brief, was *Jacob D. Zeldes,* for the appellee (named defendant).

BOGDANSKI, J. Prior to 1965 and pursuant to the provisions of chapter 130 of the General Statutes, the city of West Haven adopted a redevelopment and urban renewal plan which was designated as the "Savin Rock Urban Renewal Project No. 2." Soon

thereafter, the redevelopment agency gave the renewal project substantial publicity and made parcels of land available to prospective redevelopers. By 1974 at least six proposals were actually approved and developed on the redevelopment site.[1] At the same time, the agency had sanitary and storm sewers constructed within the project to service proposed commercial and residential development. The agency even raised the level of the land of one parcel to an elevation of ten feet above high water to prevent flooding.[2]

On October 2, 1974, a referendum, initiated by the defendant Impact, a civic organization, was ordered on the ballot by a judge of the Court of Common Pleas. The referendum read as follows: "Be it resolved, that the City of West Haven acquire title to all remaining property in the Savin Rock Urban Renewal Project No. 2 (Conn. R-75) known as Redevelopment Parcels, I, J, M, N, O & T, such property to be held forever as part of the Public Domain of West Haven, devoted to Park and Outdoor Recreational Use." If passed, the referendum would cause the city to reverse its course and turn the remaining parcels into a public park even though one of the remaining parcels of substantial size, parcel M, had already been designated as a public park. The West Haven electorate on October 17, 1974, approved the ordinance.

In response to the referendum vote, the agency sought the consent of the existing redevelopers to the proposed modification of the plan. When five

---

[1] There was testimony indicating that one of the defendants, Phyllis', Incorporated, had constructed a new facility within the project at a cost of $1,800,000.

[2] The bond issue to finance these and other site improvements totaled $1,400,000.

of the seven redevelopers withheld their consent, the plaintiff city brought this declaratory judgment action naming Impact as well as all existing redevelopers as defendants. A stipulation to certain facts was submitted to the court. The sole issue before the court was whether the ordinance passed by the referendum constituted a modification of the original redevelopment plan within the meaning of § 8-136[3] of the General Statutes.

The trial court concluded that the referendum ordinance was not a modification of the original redevelopment plan and that the city could proceed to enforce it without the consent of the redevelopers. From the judgment rendered, the defendants, Phyllis', Incorporated, and Connecticut Laborers' Pension Fund, have appealed assigning error in the court's conclusions and in the overruling of their claims of law.

The stipulation of the parties included a copy of the West Haven, Connecticut, Savin Rock Urban Renewal Project No. 2, Urban Renewal Plan, marked exhibit "E," and a map of Savin Rock Urban Renewal Reuse Parcels, marked exhibit "F." Those exhibits reveal that the land use plan for the renewal project was in accordance with a long range plan of development prepared by the West Haven planning and zoning commission. The land use map

---

[3] "[General Statutes] Sec. 8-136. MODIFICATION OF REDEVELOPMENT PLAN. A redevelopment plan may be modified at any time by the redevelopment agency, provided, if modified after the lease or sale of real property in the redevelopment project area, the modification must be consented to by the redeveloper or redevelopers of such real property or his successor or their successors in interest affected by the proposed modification. Where the proposed modification will substantially change the redevelopment plan as previously approved by the legislative body, the modification must similarly be approved by the legislative body."

shows proposed land uses, public streets, a fire station, a neighborhood park, and easements for certain utilities. Inasmuch as the project area had considerable frontage on the waters of Long Island Sound, the plan anticipated that the land uses such as motels, beach clubs and multifamily residences would be water oriented. To preserve a historical site, the neighborhood park on parcel M encompassed what is left of the original Savin Rock landmark.

Those exhibits show that the individual parcels involved in the referendum were designated as follows:

I. Commercial Recreation and Apartments.

J. Commercial Recreation and Apartments.

M. Neighborhood Park.

N. Commercial Recreation and Apartments.

O. Commercial Recreation and Apartments.

T. Commercial Recreation and Apartments.

The following are permitted uses in parcels I, J, N, O and T: "hotels, motor hotels, restaurants, beach clubs, theaters and motels and . . . accessory uses as swimming pools, terraces, cabanas and physical recreation areas for guests and such uses as are appropriately appurtenant to hotels, motor hotels, motels, beach clubs, and marinas. Commercial recreation shall exclude amusement parks or amusement park facilities, including any uses for games of skill or chance, drive-in restaurants and stands, boarding houses, bowling alleys, bingo parlors, roller skating rinks, golf driving ranges or miniature golf facilities. Multifamily dwellings having no less than four dwelling units and may include accessory uses such as swimming pools, ter-

races, cabanas, and physical recreation areas for residents and appropriate accessory uses. Office buildings. . . . Municipal services and facilities."

The trial court concluded that "municipal services and facilities" include the "park and outdoor recreational use" mandated by the referendum. Because municipal services and facilities are permitted uses in the six parcels, the court found that no modification of the plan resulted from the referendum.

The defendants, Phyllis' and the Pension Fund, contend that the phrase "municipal services and facilities" cannot be interpreted to include "park and outdoor recreational use." The phrase must be construed in the light of the entire plan since "[l]egislative intent is not to be found in an isolated sentence." *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 557, 235 A.2d 643. They assert that to focus solely on the single phrase "municipal services and facilities" is illogical, since that would result in subverting other specific and extensive language which clearly contemplates commercial and residential development. They argue that "municipal services and facilities" read in the light of the whole plan pertain to municipal services and facilities normally incidental to and supportive of commercial and residential development, such as rest rooms, fire stations, sewage pumping stations, marinas, and fishing docks.

In conclusion: originally, five of the six parcels of the redevelopment plan involved in the referendum were designated for commercial recreation and multiple apartment use, and one parcel, parcel M, was earmarked for a neighborhood park use. The effect of the referendum vote was to increase by more than five times the land for public park pur-

poses than was earmarked in the original plan, or, to put it another way to decrease by over five times the land originally earmarked for commercial recreation and apartment use. In that factual context, it cannot be said that the change of those five parcels from the category of commercial recreation and apartment use to a public parks use did not constitute a modification of the plan. To hold otherwise would be to overlook reality and the facts in the case.

We conclude that the trial court erred in determining that the referendum action did not constitute a modification of the original redevelopment plan in violation of § 8-136 of the General Statutes and did not require the consent of the redevelopers.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion the other judges concurred.