## WEST HAVEN SOUND DEVELOPMENT CORPORATION *v.* CITY OF WEST HAVEN
### (13115)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued February 3—decision released May 3, 1988

*Charles A. Sherwood,* with whom, on the brief, was *Joseph R. Mirrione,* for the appellant-appellee (plaintiff).

*Gary P. Sklaver,* with whom were *Irving Perlmutter* and *Louis Smith Votto,* corporation counsel, for the appellee-appellant (defendant).

HULL, J. This is a breach of contract action. The parties to this appeal have been involved in litigation for more than thirteen years. This is the fourth time this case has been before this court, and we have heretofore clearly and adequately set forth the facts leading to the breach of contract. *West Haven* v. *Impact,* 174 Conn. 160, 384 A.2d 353 (1978); *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn. 60, 459 A.2d 999 (1983); *West Haven Sound Development Corporation* v. *West Haven,* 201 Conn. 305, 514 A.2d 734 (1986). Therefore, a brief summary of the facts will suffice to establish the context of this appeal.

Early in 1973, the plaintiff, West Haven Sound Development Corporation, and the West Haven Development Agency entered into a contract under which the defendant, city of West Haven, conveyed a parcel of land to the plaintiff to be used pursuant to the defendant's urban renewal plan for the Savin Rock area of West Haven. The plan, which was incorporated by reference into the contract, provided for development of commercial, recreational and apartment uses on a substantial portion of the land in Savin Rock. The contract expressly provided that no modification of the plan affecting the rights of the redevelopers could be made without their consent. Pursuant to the contract, the plaintiff constructed a restaurant, called Phyllis', Inc., on its land and opened for business in December, 1973.

On October 17, 1974, the voters of West Haven passed a referendum requiring the defendant to annul its redevelopment plan and convert the remaining undeveloped land into a public park. The defendant sought the consent of the redevelopers to this purported modification of the plan; the plaintiff and several other redevelopers withheld their consent. The defendant

then sought a declaratory judgment to determine whether the referendum was, in fact, a modification of the plan. The trial court held it was not and, on appeal to this court, the trial court's decision was reversed. See *West Haven* v. *Impact,* supra.

In May, 1977, Phyllis', Inc., closed. The plaintiff brought an action alleging that the defendant had breached its contract with the plaintiff by modifying the plan and that the breach had caused its business to fail. At trial, the jury returned a verdict for the plaintiff in the amount of $3.1 million. The defendant appealed to this court. We found no error on the issue of liability but remanded the case to the trial court for a new trial limited to the issue of damages. *West Haven Sound Development Corporation* v. *West Haven,* supra. On remand, the jury awarded damages of $300,000, to which the court added $282,230.14 in interest calculated from the date of the breach to the date of the verdict.

The plaintiff appeals on the following grounds: (1) the trial court permitted the issue of causation to be relitigated; (2) the court's interrogatories confused the jury as to the concept of foreseeability of damages; (3) the plaintiff was prejudiced by the interrogatories; (4) mitigation expenses were erroneously subjected to the test of foreseeability; and (5) the trial court erred in its instructions to the jury as to the method of evaluating the plaintiff's business following the defendant's breach. The defendant cross appeals on the ground that interest should not have been awarded, but if correctly awarded, it should not have been computed from October 17, 1974, the date of the breach, but from January 3, 1978, the date of our decision in *West Haven* v. *Impact,* supra.[1] We find no error on either the appeal or the cross appeal.

[1] The defendant briefed two adverse rulings of the trial court, asking for review in the event we granted the plaintiff a new trial. In light of our disposition of this case, we need not address those issues.

## The Plaintiff's Appeal

### CAUSATION

Prior to commencement of the trial on damages, the plaintiff filed a motion in limine asking the court to limit the trial to a determination of the amount and foreseeability of damages, and to preclude the issue of causation of the plaintiff's business failure. The trial court denied the motion,[2] explaining that this court had mandated a "redetermination of damages within the ambit of the applicable rules of law governing breach of contract"; and that "the scope of this trial will embrace a redetermination of the issues of damages which are causally related to this breach, which has already been established." The court added that the defendant's liability was not at issue at the trial.

The plaintiff argues: that in allowing causation to be relitigated on remand, the trial court went beyond the scope of our mandate; that this court affirmed the jury's finding of causation and this affirmation became the law of the case; that causation was res judicata; and

---

[2] The defendant, relying on our decision in *State* v. *Bell,* 188 Conn. 406, 410, 450 A.2d 356 (1982), argues that the trial court's denial of the plaintiff's pretrial motion in limine is not reviewable and that the plaintiff, by failing to object at trial to the introduction of evidence of causation, forfeited its right to appeal this issue. We disagree. Effective October 1, 1986, Practice Book § 4185 was amended to provide in part: "In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of [preservation on appeal] without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same." Immediately following the court's denial of the motion in limine, the plaintiff requested and was granted an exception. We, therefore, consider the plaintiff's claim to be reviewable. See *State* v. *Kluttz,* 9 Conn. App. 686, 703 n.12, 521 A.2d 178 (1987).

that General Statutes § 52-266 limits the issues on retrial to those on which error has been found.

" 'In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion.* [Emphasis added.] *Mazzotta* v. *Bornstein,* 105 Conn. 242, 243, 135 A. 38 [1926]. This is the guiding principle that the trial court must observe. *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 146 Conn. 556, 561, 153 A.2d 453 [1959]. Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. *Humphrey* v. *Gerard,* 84 Conn. 216, 221–22, 79 A. 57 [1911].' *Nowell* v. *Nowell,* 163 Conn. 116, 121, 302 A.2d 260 (1972); *State* v. *Avcollie,* 188 Conn. 626, 643, 453 A.2d 418 (1982). 'It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. The trial court should examine the mandate and *the opinion of the reviewing court and proceed in conformity with the views expressed therein.'* (Emphasis added.) *Nowell* v. *Nowell,* supra." *Wendland* v. *Ridgefield Construction Services, Inc.,* 190 Conn. 791, 794–95, 462 A.2d 1043 (1983).

The trial court, in denying the plaintiff's motion in limine, initially expressed some uncertainty as to what this court intended the scope of the proceedings on remand to be, but acknowledged that it was bound by the principles enunciated in *Wendland* v. *Ridgefield Construction Services, Inc.,* supra. It ultimately construed our opinion in *West Haven Sound Development Corporation* v. *West Haven,* supra, to permit consideration of causation as it pertains to determining damages related to the breach. The trial court was correct.

At the first trial of this case, the jury returned a general verdict for the plaintiff. When a jury returns a general verdict for the plaintiff, we must presume that it found all issues in favor of the plaintiff. *Tetro* v. *Stratford,* 189 Conn. 601, 610, 458 A.2d 5 (1983). Accordingly, in our analysis of the damages component of the verdict, we presumed that the jury had found that the damages awarded were caused by the breach. We also concluded that the jury could reasonably have found that damages were caused by the breach. The plaintiff appears to rely on these opening statements of our analysis to foreclose reconsideration on remand of the issue of causation of damages. Our analysis, however, did not end there. We proceeded to assess the sufficiency of the evidence to prove the specific damages claimed by the plaintiff to have been caused by the breach. We concluded that the verdict was excessive; that there was insufficient evidence from which the jury could have evaluated and awarded damages for diminution in the value of the plaintiff's business caused by the breach; that there might have been some overlapping or duplication of certain elements of damages; and that, while the plaintiff would have been entitled to recover the cost of its reasonable efforts to mitigate its damages, there was no way to ascertain the extent to which the jury considered these expenses in its award. *West Haven Sound Development Corporation* v. *West Haven,* supra, 316–32.

We attributed these results to the absence of appropriate instructions to the jury as to how they were to compute damages if they found a breach. Id., 327. We noted that the jury had been "left to calculate damages in their largely unbridled discretion," without having had the elements of damages identified, delineated or explained. Id., 333. Further, recognizing the complexity of this case, we stated that, on remand, the trial court should afford the jury detailed guidance on the legal

doctrines underlying the calculation of damages. Id. We made it clear that, throughout our opinion, we had articulated only standards for identifying and valuing the damages claimed by the plaintiff and emphasized that their compensability was contingent upon their foreseeability. Id., 332–33. We also remarked that, on remand, the plaintiff was not bound by our categorization of the elements of damages or the values we assigned to each grouping, but that "the plaintiff is free to value and prove its damages, and under whatever theory as it wishes. In short, the plaintiff on remand is not collaterally estopped by the dollar amounts or theories of recovery discussed in this opinion." Id., 322 n.4. To summarize, we found error in the resolution of virtually every issue pertaining to the award of damages. Accordingly, our mandate directed a complete redetermination of damages encompassing identification of those damages caused by the breach, their valuation and foreseeability.

The trial court, therefore, correctly permitted the trial on remand to embrace the issue of what damages had been caused by the breach. The fact of the breach, itself, was not before the jury; that issue had been resolved at the first trial and the defendant's liability had been established and upheld by this court. The trial court, in its opening remarks, and repeatedly in its instructions to the jury, cautioned the jury that the defendant had already been found to have breached its contract with the plaintiff and that the jury was to consider damages only. Determination of damages necessarily contemplates a finding that the breach was the cause of the damages claimed. "It is hornbook law that to be entitled to damages in contract a plaintiff must establish a causal relation between the breach and the damages flowing from that breach. Such causal relation must be more than surmise or conjecture, inasmuch as a trier is concerned not with possibilities but with

probabilities. Where . . . the damages claimed are remote from the breach complained of and the causal connection is wholly conjectural, there can be no recovery." *Calig* v. *Schrank*, 179 Conn. 283, 286, 426 A.2d 274 (1976); see also J. Calamari & J. Perillo, Contracts (1987) § 14.4, pp. 591–92; D. Dobbs, Remedies (1973) § 12.3, pp. 798–803; 3 Restatement (Second), Contracts §§ 346, 347. Therefore, the retrial on damages comported with our mandate.

Furthermore, the jury was given interrogatories in which they were asked to state whether each element of damages claimed by the plaintiff had been caused by the defendant's breach. In all cases, the jury answered in the affirmative. Accordingly, even if the court had erred in allowing causation to be relitigated, this error resulted in no harm to the plaintiff in whose favor each interrogatory regarding causation was answered.

### INTERROGATORIES

The plaintiff's second, third and fourth claims are addressed to alleged errors in the jury interrogatories and, thus, may be treated together. The plaintiff argues that the interrogatories propounded by the court to the jury misinformed the jury about the concept of foreseeability of damages and resulted in answers that were internally inconsistent. The plaintiff contends further that the interrogatories improperly guided the jury to its verdict, rather than explaining or limiting the verdict, as provided by Practice Book § 312.[3] The plaintiff also asserts that expenses incurred to mitigate damages need not be foreseeable and that the court's interrogatory on this issue erroneously apprised the

[3] Practice Book § 312 provides in relevant part: "The court may submit to the jury interrogatories for the purpose of explaining or limiting a general verdict, which shall be answered and delivered to the clerk as a part of the verdict."

jury that such damages must be foreseeable. The defendant counters that the plaintiff was afforded ample opportunity to review and object to the interrogatories but, because the plaintiff failed to object and take an exception, his claims of error are not reviewable. We agree with the defendant.

At the close of the evidence and before the court charged the jury, counsel and the court discussed the content and scope of the interrogatories to be presented to the jury.[4] The court apprised counsel that it intended to formulate the interrogatories to inquire whether the breach caused the damages and whether they were reasonably foreseeable. Counsel for the plaintiff expressed some concern that foreseeability should be more specifically enunciated. The court declined to recite the principles of foreseeability of damages in the interrogatories but assured counsel that it would instruct the jury as to the concept of foreseeability. Following a recess, the court presented counsel with its interrogatories. The plaintiff's counsel voiced his prior reservation regarding the concept of foreseeability as it appeared in the interrogatories. The court again assured him that the jury instructions would articulate the law of foreseeability of damages and that the interrogatories would have to be answered in accordance with the court's instructions on the law. Counsel did not object to the interrogatories. The court propounded nine interrogatories to the jury, eight of which were addressed to the elements of damages claimed by the plaintiff. The interrogatories asked the jury to determine whether the plaintiff had proved by a fair preponderance of the evidence that the damages had been caused by the breach of contract, and if the jury so found, whether the damages were foreseeable. The court's charge to the jury on foreseeability was virt-

---

[4] Both the plaintiff and the defendant had submitted proposed interrogatories to the trial court.

ally identical to the charge requested by the plaintiff. Following the jury charge, during which the interrogatories were read to the jury, the trial court invited exceptions from the parties. Again, the plaintiff allowed an opportunity for preserving this alleged claim of error to pass. We may presume from the plaintiff's repeated failure to object to the interrogatories that it assented to their content and submission to the jury. *Shelby Mutual Ins. Co.* v. *Williams,* 152 Conn. 178, 183, 205 A.2d 372 (1964); *Freedman* v. *New York, N.H. & H. R. Co.,* 81 Conn. 601, 611, 71 A. 901 (1908). Accordingly, we shall not review this claim. Practice Book § 4185.

### JURY CHARGE ON LOSS OF VALUE OF BUSINESS

The plaintiff contends that the trial court's charge to the jury on diminution in the value of the plaintiff's business occasioned by the defendant's breach unduly limited the time frame to be considered by the jury. Specifically, the plaintiff takes issue with the court's instruction that the jury was limited to considering the value of the business immediately before and immediately after the breach so that the jury was foreclosed from considering damages that arose subsequent to the breach.

" 'The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as he would have been in had the contract been performed.' " *West Haven Sound Development Corporation* v. *West Haven,* supra, 319; *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 272, 320 A.2d 811 (1973). Damages for breach of contract are to be determined as of the time of the occurrence of the breach. *Kevin Roche-John Dinkeloo & Associates* v. *New Haven,* 205 Conn. 741, 749, 535 A.2d 1287 (1988); *Gordon* v. *Indusco Management Corporation,*

supra, 264. In this case, the diminution in the value of the plaintiff's business would be measured by the difference between the value of the business had the contract been performed and its value as a result of the breach. *West Haven Sound Development Corporation* v. *West Haven*, supra, 323–29.

A court's charge to the jury is tested by whether it fairly presents the case to the jury so that injustice is not done to either party under the established rules of law. *Holbrook* v. *Casazza,* 204 Conn. 336, 351–52, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988); *Borsoi* v. *Sparico,* 141 Conn. 366, 371, 106 A.2d 170 (1954). Here, the trial court identified for the jury the three categories of damages claimed by the plaintiff: (1) damages for loss of business; (2) damages for a deficiency judgment rendered against the plaintiff in an action to foreclose a mortgage on the premises of Phyllis', Inc.;[5] and (3) damages for expenses incurred to mitigate the loss occasioned by the breach. With respect to the damages for loss of business, the court charged the jury as follows: "In determining the value of the plaintiff's loss of business, you are to consider the evidence presented to you as to the value of the business, assuming that redevelopment went forward as originally anticipated, subtracting therefrom any value that remained as a result of the breach. In short, for this element of the plaintiff's damages, the plaintiff must first show the value of its business, assuming there had been no breach and the value of the business as a result of the breach. So you've got the before and after, into which you will make an inquiry.

"In determining what damages, if any, the plaintiff suffered because of the breach of contract on Octo-

---

[5] See *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn. 60, 459 A.2d 999 (1983).

ber 17, 1974, you must determine to what extent, if any, the plaintiff's business decreased as a natural consequence of the breach. You will have to decide what was the value of the plaintiff's business immediately before the breach, in October of 1974, considering the prospects for redevelopment which existed at that time, the degree to which those prospects were certain to occur and the time frame in which they would have occurred, had there been no breach. You must then compare this figure with the value which you assign to the plaintiff's business immediately after the breach in October of 1974, considering that no additional development would occur on those parcels which the October, 1974 referendum required to be retained as open space."

The court added that the jury was required to assess the status of the business as of October, 1974, immediately before and immediately following the breach. The court then summarized the testimony of the expert witnesses for both sides as to pre- and postbreach evaluations. The plaintiff took an exception to the court's instruction that the postbreach value be ascertained as of the time immediately following the breach. Counsel for the plaintiff conceded that the determination of damages must be made as of the time immediately following the breach, but nonetheless asserted that the time frame was unusually confining because "certain things . . . may have gone on for a period of time after, shall we say, after—ten minutes after the decision on October the 17th of 1974, [and] definitely have [been] a positive factor to a determination as to the total amount of damages." In its brief to this court, the plaintiff claims that the charge prevented the jury from considering any circumstances that arose following the breach.

We conclude that the jury charge fairly presented the case to the jury and was correct in its articulation of

the legal principles applicable to the assessment of the plaintiff's damages for diminution of the value of its business. The court's use of the language, "immediately before" and "immediately after," viewed in the context of the entire charge on this issue, served to focus the jury's attention, in its evaluation of the business, on the time of the breach, in accordance with the applicable law. To arrive at its conclusion, the jury had to consider the evidence as to the projected effect of the redevelopment plan on the plaintiff's business, had the plan gone forward, and the impact of its discontinuation on the plaintiff's business. Therefore, the plaintiff was not prejudiced by the charge to the jury on loss of business.

Finally, the plaintiff contends that the charge prevented the jury from looking to the future to determine the extent to which the plaintiff was obliged to mitigate damages, and to ascertain damages incurred in so doing. The plaintiff also asserts that the jury's consideration of damages arising from the deficiency judgment was likewise affected. We note that the court gave the jury separate instructions as to each of these issues. A fair reading of the charge discloses that the time frame applicable to assessing damages for loss of business was not imposed on the determination of the other elements of damages nor has the plaintiff suggested any reading of the charge that supports its argument. Accordingly, we find this claim to be without merit.

### The Defendant's Cross Appeal

The defendant appeals on the ground that the trial court abused its discretion in awarding prejudgment interest on the verdict calculated from the date of the breach to the date of the verdict. The ninth interrogatory presented to the jury the issue of whether the defendant had wrongfully detained money damages due

the plaintiff as a result of the breach. The jury found that it had. The defendant argues that the wrongful detention did not occur until we issued our decision in *West Haven* v. *Impact,* 174 Conn. 160, 384 A.2d 353 (1978), in which we held that the referendum constituted a modification of the redevelopment plan. Accordingly, the defendant contends, interest, if any, should begin to run from that time. The defendant also asserts that interest should not be awarded. The defendant does not contest the amount of the interest calculated from the time of breach to the date of the verdict.

The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court. *H.B. Toms Tree Surgery, Inc.* v. *Brant,* 187 Conn. 343, 348, 446 A.2d 1 (1982); *Cecio Bros., Inc.* v. *Feldman,* 161 Conn. 265, 275, 287 A.2d 374 (1971). Before awarding interest, the trial court must ascertain whether the defendant has wrongfully detained money damages due the plaintiff. *Cecio Bros., Inc.* v. *Feldman,* supra, 274–75. Interest on such damages ordinarily begins to run from the time it is due and payable to the plaintiff. Id. "The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule." *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 398, 65 A. 134 (1906).

At a posttrial hearing, the defendant objected to the allowance of interest arguing that the defendant had not supported the referendum that resulted in the breach and that it did not become clear that a breach had occurred until this court decided *West Haven* v. *Impact,* supra. Thus, the defendant asserted, interest, if any, should run from January, 1978. The defendant further argued that, in light of the history of this case,

no prejudgment interest should be awarded. The trial court responded that it was agreed among the court and the parties that the factual predicate for awarding interest, wrongful detention of money damages, would be resolved by the jury and, upon an affirmative finding, interest would be computed. Aside from the general principles pertaining to the court's discretion in awarding interest, the defendant cited no legal authority for its proposition that interest be awarded from the date of our decision in *West Haven* v. *Impact,* supra.

The defendant has renewed these same arguments in its brief and at oral argument before this court. As to its opposition to the referendum, we remind the defendant that its identification with its electorate, and thus, its liability for the effect of the referendum, has been established. *West Haven Sound Development Corporation* v. *West Haven,* supra. Accordingly, we shall not entertain this contention. Furthermore, as at trial, the defendant has cited no authority for its argument as to the time from which interest should be calculated, nor are we aware of any authority suggesting the result sought by the defendant. Were we to follow the defendant's logic, interest could never be awarded from the time of breach but only upon establishment of the fact of the breach after trial or, as in this case, upon an appellate court's reversal of an erroneous trial court decision. That is simply not the law in this state. See, e.g., *Sabo* v. *Strolis,* 148 Conn. 504, 506, 172 A.2d 609 (1961) (interest allowed from date of breach of construction contract); *Stoddard* v. *Sagal,* 86 Conn. 346, 350, 85 A. 519 (1912) (contract for legal services, refusal to pay debt; interest allowed from presentation of the bill to the date of verdict); *Loomis* v. *Norman Printers Supply Co.,* 81 Conn. 343, 350, 71 A. 358 (1908) (contract for goods; interest to be computed from the date of breach, not from the date of contract). Therefore,

the trial court did not abuse its discretion in awarding interest from the date of the breach.

There is no error in either the plaintiff's appeal or the defendant's cross appeal.

In this opinion the other justices concurred.