[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This memorandum covers the above captioned cases which were consolidated for trial. The first matter commenced with the plaintiff Laurence Daum bringing this action against the defendant Dwight Williams on November 9, 1987. Subsequently, on October 16, 1989, the plaintiff filed a two count revised complaint.
The first count alleges that the defendant breached his build an addition to the contract with the plaintiff to plaintiff's commercial building by abandoning the work before completion. The second count alleges that, because the defendant took full payment but abandoned the work and refused to pay a heating and air conditioning subcontractor who placed a mechanic's lien on the plaintiff's building, the defendant violated Connecticut General Statutes 42-110a et seq., Connecticut Unfair Trade practices Act (CUTPA).
Count one of the revised complaint alleges that the defendant entered into a contract dated November 5, 1986, wherein for the sum of $175,000.00 he agreed to erect a 38' x 44' addition, with a 12' return to the plaintiff's building located in Newtown, Connecticut. (A copy of the agreement is attached to the complaint as exhibit A.)
In paragraph two the plaintiff alleges that the defendant requested and that the plaintiff paid to the defendant, pursuant to said contract, the sum of $260,500.00. In paragraph three the plaintiff alleges that the defendant in September of CT Page 2041 1987 abandoned the work without completing same and he left incomplete or undone a substantial portion of the work, and that the defendant has refused to return to complete same. The plaintiff then sets forth under the headings "Exterior" and "Interior" the work left incomplete or undone.
In paragraph four the plaintiff alleges and sets forth the work that was partially complete, the majority of which he claims is substandard and does not meet the standards of the trade. In paragraph five the plaintiff alleges that as a result of the defendant's failure and refusal to complete the contract, the completion date has been missed and the plaintiff will be forced to hire additional contractors to repair and replace the defective work done by the defendant and to complete the contract, in that each and every item described in paragraphs three and four requires contractors to supply and install the incomplete items listed in paragraph three and to repair or correct the items listed in paragraph four.
In paragraph six the plaintiff alleges that, as a result of the defendant's failure to complete the contract, the existing areas of the plaintiff's building have suffered damage due to long exposure to the elements. In paragraph seven the plaintiff alleges that, as a result of the defendant's failure to comply with his contractual obligations, the plaintiff has been and will be harmed to his loss and detriment and has lost rental income and has suffered mental anguish, lost sleep extreme annoyance and loss of respect of his tenants.
In the second count of the revised complaint the plaintiff alleges that there was a CUTPA violation by the defendant because he agreed to employ and pay all of the subcontractors under the contract but did not pay Main Heating 
Cooling Enterprises, Inc., who placed a $5,000 lien on the plaintiff's property. Plaintiff further alleges that defendant's conduct of taking full payment and refusing to complete the contract and not paying the subcontractor was unconscionable and in violation of 42-110(a) et seq.
The defendant filed an answer in which he admits the first paragraph of the first count but denies all of the other paragraphs. As to the second count, the defendant also admits the first paragraph but denies all the other paragraphs.
The defendant also filed several special defenses. The CT Page 2042 first defense alleges that the plaintiff acted as his own contractor and that the plaintiff assumed responsibility for construction, supervision and approval. In the second special defense, defendant alleges that any work delayed, incomplete, unsound or improper was the fault of third parties hired by the plaintiff who are responsible for any damages that may have occurred. In the third special defense the defendant alleges that plaintiff failed to suffer any economic loss by virtue of the defendant's conduct. As to the fourth special defense, the defendant alleges that plaintiff failed to mitigate damages. As to the fifth special defense, the defendant alleges that at all times the plaintiff or his agents or third parties were on or about the property and were in a position to inspect and approve or disapprove work in progress. In the sixth special defense the defendant alleges that the plaintiff knew of defects in the construction and did not raise timely objections to the design or construction, and as such, the plaintiff is now estopped from raising same due to his previous approval of said work.
The defendant also filed a counterclaim in which he indicates that the plaintiff failed to pay defendant for services rendered and construction completed. Also, that the plaintiff has breached the contract between the parties causing defendant monetary losses of $60,000.
Combined with the matter of Laurence Daum v. Dwight Williams is the action by Dwight Williams v. Laurence Daum, City Trust and Main Heating Cooling Enterprises. In the first count against defendant Daum only the plaintiff alleges he entered into a written contract with the defendant to build an addition to defendant's building in Newtown, Connecticut for the sum of $175,000 and that the parties anticipated a completion date of March 7, 1987, barring unforeseen circumstances in weather and the lack of materials.
The plaintiff Williams further alleges that the defendant Daum was residing in Hawaii during most of the period of construction and was difficult to reach for purposes of change orders and other communications and that defendant Daum requested extras to the contract and other changes and specifications which caused delay in the construction beyond the anticipated date. The plaintiff alleges he performed under the contract in a workmanlike manner and that he saved the defendant money by charging less. In addition, the defendant failed to pay the balance due on the contract in the amount of $5,000 and for extras at a cost of CT Page 2043 $17,275.
Also, on October 23, 1987, the plaintiff Williams filed and served a notice of intention to claim a mechanic's lien, said mechanic's lien to be in the sum of $22,275. Said mechanic's lien was filed in the Clerk's Office in Newtown, and it is further alleged that the filing of the lien occurred within 90 days of furnishing material and services to the defendant.
Plaintiff Williams further alleges that the lien has not been cancelled or otherwise discharged or bonded and that the lien complied in all respects with the requirements of the Connecticut General Statutes. Further, that not more than one year has expired since the filing of the mechanic's lien. Plaintiff Williams further alleges that defendant Daum has no defense, claim or offset against the amount claimed by Williams as being due him for the improvement of Daum's property.
As to the second count of plaintiff Williams complaint as to City Trust, there was no evidence presented during the course of the trial on this count.
As to the third count of plaintiff Williams' complaint as to Main Heating, paragraphs one through sixteen of the first count are repeated. Plaintiff Williams further alleges that Main Heating filed a mechanic's lien on Daum's property in Newtown and that Main Heating claims some interest in property accrued prior to the plaintiff's mechanic's lien.
The answer filed by defendant Daum is as follows:
Count One: paragraphs one, two and three are admitted; paragraphs four through nine are denied; paragraphs ten, eleven, twelve there's no knowledge; thirteen is denied; fourteen and fifteen are admitted and sixteen is denied.
The answer filed by defendant Main Heating is as follows:
Count Three: One and two are admitted; three to sixteen no knowledge; seventeen to nineteen is admitted.
CROSS COMPLAINT OF MAIN HEATING
The first count is against the defendant Daum only. In CT Page 2044 paragraph six the claim is made that defendant Daum failed to pay Williams and failed to pay Main Heating. The second count is against City Trust. There was no evidence presented on this count.
The third count is against Dwight Williams only. In this count paragraph one realleges paragraphs one through sixteen of the first count. Two: defendant Main entered into a contract with Williams it alleges and that Williams agreed and promised to pay Main for work and material. Three: Williams informed Main that there would be a delay and would notify Main when to continue. Four: Williams is in default of the contract, hired another contractor to complete the work Main began. Five: Williams is in default of his contract. Six: Williams refused to pay.
 DEFENDANT DAUM'S REPLY TO DEFENDANT MAIN HEATING'S CROSS COMPLAINT
First Count: Paragraphs two and four are admitted. Paragraphs six and thirteen denied. All of the other paragraphs he files no knowledge.
The file reflects that Judge West granted the motion to strike Main Heating's count against Williams on January 18, 1989.
Judge West, on December 20, 1989, granted default against the City Trust for failure to appear in the cross complaint.
On December 11, 1991, answers of the City Trust filed claim special defenses, lien involved because it was not served upon the City Trust as an equitable owner. 49-34, certified upon owner necessary requirement. Same special defense against the cross complaint.
Defendant Daum's reply to Main Heating's cross complaint: paragraphs two and four admitted, six and thirteen denied, balance of paragraphs file no knowledge.
FACTS FOUND
The court finds the plaintiff Laurence Daum to have proven that on November 5, 1986 he entered into a written contract with the defendant Williams to build an addition to his existing CT Page 2045 building in Newtown for the sum of $175,000 (see plaintiff's exhibit A, contract). This contract provides that the work was to be performed in accordance with plans (exhibit B) and specifications (exhibit C), with work to be completed on or about March 7, 1987. There were four change orders executed by the parties to the contract, two of them executed after March 7, 1987. While the contract was executed between the plaintiff and the defendant, the architectural plans for the building were not given to the defendant until five to six months after execution of the contract.
The court finds that plaintiff Laurence Daum has proven that defendant Williams breached his contract and that he is responsible for most of the items identified on the punch list dated October 5, 1987 which was revised on March 7, 1988 and entered into evidence as exhibit E. The court finds that defendant Williams failed to finish his work under the contract though he was fully paid.
In order to recover damages, the plaintiff has the burden of producing evidence that affords the court a reasonable basis to measure the plaintiff's loss. Plaintiff must establish damages by a fair preponderance of the evidence. Dorne v. Williams, 140 Conn. 193, 201. While damages need not be proved with mathematical precision, they must be proven with reasonable certainty.
"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as he would have been had the contract been performed." West Haven Sound Development Corp. v. West Haven, 207 Conn. 308, 317. "Damages for breach of contract are to be determined as of the time of the occurrence of the breach." West Haven Sound Development Corp. v. West Haven, supra, p. 317.
In the case of Sperry v. Moles, 3 Conn. App. 692, the court stated, "As a general rule, in awarding damages upon a breach of contract, the prevailing party is entitled to compensation which will place him in the same position he would have been had the contract been properly performed." Levesque v. D M Builders, Inc., 170 Conn. 177, 180, 181; Fuessenich v. DiNardo, 195 Conn. 144, 153. "Such damages are measured as of the date of the breach." Sperry, supra, p. 696. "For a breach of construction contract involving defective or unfinished CT Page 2046 construction, damages are measured by computing either (i) the reasonable cost of construction and completion in accordance with the contract . . . (ii) or the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste." Sperry v. Moles, supra, p. 696.
The court finds the following items from exhibit E to be part of plaintiff Daum's damages and the amount placed on them to be fair and reasonable.
A. Items not installed:
EXTERIOR ITEMS:
Two window screens $ 450.00
INTERIOR ITEMS:
 Rest rooms plumbing, walls, door, electrical value for 1 1/2 rest rooms 2,000.00 Rest room toilet accessories 1,200.00 Entry mat and floor recess 350.00 Dental Lab Room 1,600.00 Lower level wood base 550.00 Attic Insulation 500.00 Door stops 200.00 Clear pine wood base trim 800.00 __________ TOTAL $7,650.00
B. Items poorly executed requiring correction or completion:
EXTERIOR ITEMS:
 Final grading around west side of building $1,500.00 Soffit and soffit vents 1,200.00 Brick work 600.00 Old, unused electrical conduit — removed or capped 300.00 Concrete pad 350.00 Upper entry handicap ramp 800.00 Paving — poor 2,500.00 CT Page 2047
INTERIOR ITEMS:
 Hallway doors and hardware poorly installed 300.00 Storage room door strike 50.00 Lounge door 150.00 Oak handrails loose and not secured to walls 500.00 Poor wall taping and spackling 250.00 Smoke detector missing 100.00 _________ TOTAL $8,250.00
ISSUE OF THE REDUNDANT STAIRS
One of the plaintiff's claims is for the defendant's failure to remove, in accordance with the plans and specifications (exhibits B and C), a set of stairs which the architect has referred to as the redundant stairs. The defendant claims correctly that he did not see the plans or specifications prior to the drafting of the construction contract. Defendant also claims that plans were modified at least three times during construction.
The defendant correctly states, "Regardless, when the building contract provides that a builder should do the construction in accordance with the specifications, the terms of the specifications become part of the contract by reference" citing Caruthers v. Donahoe, 85 Conn. 629 (1912).
However, defendant claims the failure of Daum to provide him with a copy of the plans prior to entering into the contract blinded Williams to Daum's contractual requirements. The defendant claims that since the removal of the redundant stairs did not appear in the contract between the parties, he is not responsible for it. To further buttress his point, the defendant points out that under the contract, signed by the parties, in paragraph 11, it recites that "any mistakes, oversight or misspecifications by the architect or his agent will be at his expense and not the contractor's." The defendant also cites case law that a contractor will not be responsible for loss or damage resulting from defective plans or specifications supplied by the contract owner. SNET Co. v. State, 165 Conn. 644.
The defendant admits that he never complained to Mr. Griss about defective plans. The court cannot conceive of why the defendant did not see the direction to remove the redundant staircase as set forth in the plans. The court cannot find any CT Page 2048 credible evidence to support a mistake, oversight or misspecification. Accordingly, the court finds that the redundant stairs were part of the contract and were to be removed by the defendant.
The court further finds that the expense to remove said redundant staircase in the amount of $5,700 is a fair and reasonable amount.
DEFENDANT'S SPECIAL DEFENSES
As to the six special defenses filed by the defendant, the court finds no credible evidence to support any of them.
DEFENDANT'S COUNTERCLAIM
The court finds that the defendant has failed to produce any credible evidence to support such claim and, therefore, finds in favor of the plaintiff on this matter.
MECHANIC'S LIEN OF MAIN HEATING AIR CONDITIONING COMPANY
During the construction of the building, a change order was made concerning the heating and air conditioning system. The defendant conceded that he hired Main Heating and further agreed that Main Heating was owed a balance of $5,000. Not having received payment, Main Heating filed a mechanic's lien in that amount. The defendant claims the plaintiff breached the contract and failed to make the progress payments required under the contract and its change order. Defendant claims he should not be held responsible
The defendant concedes in his brief that "if a landowner paid a general contractor prior to receiving notice of a subcontractor's mechanic's lien, the subcontractor had no right to a mechanic's lien." Ficken v. Edward's, Inc., 23 Conn. Sup. 378
(1962).
MECHANIC'S LIEN
General Statutes 49-33 through 49-53 set forth the statutory authority for mechanic's liens.
The right to place a mechanic's lien on real estate for a claim in excess of $10 for material furnished or services CT Page 2049 rendered in the construction of a building or in the improvement of a lot is established by General Statutes 49-33.
"The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such a claim a lien thereon." (Citations omitted.) H S Torrington Assoc. v. Lutz Engineering Co., 185 Conn. 549, 553; see also J. C. Penny Properties, Inc. v. Peter M. Santella Co., 210 Conn. 511, 514. Provisions of mechanic's lien laws should be liberally construed so as to reasonably and fairly implement its remedial intent. Id.; see also J.C. Penny Properties, Inc., supra, 514.
"If . . . a general contractor receives progress payments that are not turned over to those who have done the work . . . and ultimately defaults entirely, the owner making such payment and completing such a job is protected as long as the owner acts in good faith and reasonably, as defined by the statutes." Rene Dry Wall Co. v. Strawberry Hill, 182 Conn. 568, 573.
Since the court has already made a finding that all payments including the $5,000 payable to Main Heating were paid by the plaintiff to the defendant prior to the filing of the mechanic's lien, the general contractor is responsible for the debt and the mechanic's lien by Main Heating Air Conditioning Company is discharged.
TIME OF COMPLETION
The plaintiff claims that the defendant violated the completion date in the contract of March 7, 1986. However, the defendant never complained about any delay and two change orders were signed after the March 7, 1986 completion date.
It has been generally held the phrase "time is of the essence" must appear in the contract (for the sale of real estate or for the provisions of services) in order for it to be so. Grenier v. Compratt Construction Co., 189 Conn. 144 at 150. In the case of Miller v. Bourgoin, the court at page 498 indicates:
 "Where a time for performance is stated in an agreement, a party's tender of performance within a reasonable time thereafter will be considered substantial performance unless the parties intend for the performance to be of CT Page 2050 the essence. Mihalyak v. Mihalyak, 11 Conn. App. 610, 616. Because delays are typical in transactions involving real estate or building contracts, time is ordinarily not of the essence in these contracts. 6 S. Williston Contracts (3d Ed.) 849, 852. The resolution of whether it is part of the contract involves a question of intent of the parties, to be determined as a matter of fact from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto. Kakalik v. Bernardo, 184 Conn. 386, 393.
The court finds no credible evidence to support the proposition that time was of the essence in this contract and, therefore, finds that the plaintiff's proof fails on this issue. Accordingly, the plaintiff's claim of loss rental income fails.
Plaintiff Daum has also claimed as damages the cost of repairs to the rest room by Mr. Wheeler in the amount of $1,400 and the repair of the concrete pad for which Mr. Barney was paid $1,000. The court finds that plaintiff Daum has by credible evidence proven his claim, and therefore the court finds the issue on these repair costs in favor of plaintiff Laurence Daum.
Another claim brought forth by plaintiff Daum is that he overpaid defendant Williams for the work that was to be performed. The plaintiff claims he paid the defendant the sum of $260,500. The defendant admits receiving-the sum of $246,000.
The court finds there is insufficient credible evidence on this claim and, therefore, finds the plaintiff has failed in his burden of proof.
The second count of plaintiff's complaint which set forth a claim under 42-110a et seq. (CUTPA) was ruled upon by the court during the trial of the case and the issue was found in favor of the defendant Williams.
The court, having found the issues in favor of the plaintiff in the first count finds the plaintiff to recover as damages the sum of $5,700 for the redundant stairs, $15,900 for repairs on exhibit E, $1,400 reimbursement for Wheeler and $1,000 CT Page 2051 reimbursement for Barney for a total of $24,000.
Judgment shall enter in the matter of Laurence Daum v. Dwight Williams, CV87 0293773 S in favor of the plaintiff to recover the sum of $24,000.
As to the other file, Dwight Williams v. Laurence Daum, CV88 0295698 S, the court finds the issues in favor of the defendant Laurence Daum on the complaint and in favor of Main Heating Cooling Enterprises, Inc. on their cross-complaint.
Accordingly, judgment shall enter in this matter on behalf of the defendant Laurence Daum with costs and judgment to enter in the amount of $5,000 plus costs in favor of Main Heating Cooling Enterprises, Inc.
WILLIAM J. McGRATH, JUDGE.