[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Most of the procedural background of this remarkably slow piece of litigation is set forth in this court's August 9, 1996 Ruling on the Cross Motions for Summary Judgment. In that ruling the court entered a decree of specific performance that the defendant convey the premises to the plaintiff. The court also CT Page 12321 ordered that
 A hearing shall be held 1) to determine the price to be paid by the plaintiff for the premises pursuant to ¶ 10 of the Lease, 2) to determine if the plaintiff is permitted to set off payments to the defendant denominated as rent from October 15, 1990 to the present against the option price for the property, and 3) to determine if the defendant is entitled to the reasonable value of the plaintiff's use and occupancy of the premises during that period of time the plaintiff has occupied the premises without compensating the defendant for such occupancy.
State of Connecticut v. Lex Associates, Superior Court-Housing Session, judicial district of Hartford/New Britain at Hartford Doc. No. 9204-4259 (August 29, 1996), p. 8. The court heard from the parties the summer of 1997, when they requested the hearing ordered in the above ruling.
The court heard testimony and argument on September 26, 1997. The parties submitted post hearing memoranda on October 10, 1997 and October 20, 1997. On November 7, 1997, the court received additional Superior Court case law from the defendant, and the state responded to that submission on November 20, 1997.
The time has come to conclude this protracted equitable proceeding. "In framing an order of specific performance . . . the trial court can mold it to do justice as fully as is practicable . . . . If the exact performance promised is very difficult to enforce or has become impossible, unreasonably burdensome, or unlawful, the court may order a performance not identical with what was promised." Sink v. Meadow Wood CountryEstates, Inc., 18 Conn. App. 569, 578, cert denied, 212 Conn. 809
(1989); but see, Robert Lawrence Associates, Inc. v. Del Vecchio,178 Conn. 1, (1979)("As a general rule, equity, in deciding whether to grant specific performance in enforcing a contract, will consider the fairness of an agreement in accordance with the circumstances as they existed at the time of the execution of the contract even though the property contracted to be sold becomes considerably more valuable at the time performance is due.")Heyman v. CBS, Inc., 178 Conn. 215, 229 (1979). The court's aim in fashioning relief is to place the parties in the same situation as they would have been if the contract had been CT Page 12322 performed according to its terms. Lombardi v. Laudati,124 Conn. 569, 576 (1938).
Guided by those principles, the court turns to the three tasks remaining to conclude this matter. As to the first task, the parties have agreed that the price to be paid by the plaintiff for the premises pursuant to ¶ 10 of the lease is $395,000.
The final two tasks are related and will be completed as one. The second task is to determine if the plaintiff is permitted to set off payments to the defendant denominated as rent from October 15, 1990 to the present against the option price of $395,000. The plaintiff stopped the rental payments made after October 15, 1990 on June 20, 1995. Those payments totaled $398,142. The third task is to determine if the defendant is entitled to the reasonable value if the plaintiff's use and occupancy of the premises during that period of time the plaintiff occupied the premises without compensating the defendant for the occupancy.
Despite the defendant's assertions, there is no persuasive authority to require the plaintiff to pay rent or use and occupancy after October 15, 1990. As of that date, the plaintiff should have had title to the premises; no rent or use and occupancy would be due to the defendant. Heyman v. CBS Inc.,178 Conn. 215, 223-24 (1979). In Heyman, the Court found that no rent was due after the option was proffered.
 The second count of the plaintiffs' complaint alleged that the defendant's right to continue in possession of the Danbury premises had terminated by reason of nonpayment of rent, and asked for damages. The trial court concluded that this claim could not survive the conclusion that the option clause was enforceable. We agree. Article VIII of the amended lease, the option clause reprinted above, explicitly makes time of the essence with respect to the stipulated closing dates and specifies that "no further base rental shall be due or payable subsequent to such closing date." Under the terms of the contract, and as equitable owner of the property, the defendant was relieved of any further rental obligation by its valid tender of payment on October 31, 1975. CT Page 12323
Id. The Heyman court based its holding not only on the language of the lease but also on the fact that the defendant was the "equitable owner." Here, the lease provides for the prompt delivery of the title once the tender is made. Since the title should have passed on October 15, 1990, the plaintiff is entitled to set off the payments it made subsequent to October 15, 1990, and the defendant is not entitled to any use and occupancy or rental payments after October 15, 1990.
The defendant has cited a number of cases to argue that rent and use and occupancy are due to it for the period after October 15, 1990. The court has reviewed those cases, and finds them distinguishable on the facts. In light of the language ofLombardi v. Laudati, supra, and Heyman, the out of state authority is not persuasive. The defendant argues that ParkwayTrailer Sales, Inc. v. Wooldridge Bros., 148 Conn. 21 (1960), supports his position that the plaintiff should pay use and occupancy after October 15, 1990. The facts in Parkway Trailer
are significantly distinguishable. There the issue before the Supreme Court was whether the payments made after the term of the lease had expired and prior to the demand for transfer of the title could be characterized as rental payments to constitute a waiver of the option. That is clearly not the issue here, where the period in dispute is subsequent to the proffer of the purchase price and the date the title should have been transferred.
Under the lease, the plaintiff paid additional rent in the amount of taxes over the base tax of $19,665.96. After October 15, 1990, the defendant would no longer be responsible for any tax payments, and according to General Statutes § 12-19a, the plaintiff as the owner would pay a percentage (20%) of the taxes assessed against the property. Unfortunately, as a result of the defendant's refusal to convey on October 15, 1990, it made payments that would not have been due and the taxes have not been paid in full since 1994, so that interest and liens have accrued. The defendant stayed current on the taxes through Grand List 1993, without any payments of additional rent from the plaintiff after the 1989 Grand List. Likewise, the sewer charges which were the defendant's responsibility under the lease would be assumed by the plaintiff as of October 15, 1990; those payments have not been made in full and interest and lien fees have accrued. An equitable result that conforms to the remedy of specific performance is for the plaintiff to pay 20% of the property taxes CT Page 12324 as well as the sewer charges that became due after October 15, 1990. In light of the defendant's payment of the total tax payments due from 1990 through 1993, the parties shall share equally in the payment of the interest and liens that have accrued as a result of the nonpayment of the sewer charges and taxes. See Natural Harmony, Inc. v. Normand, 211 Conn. 145, 149
(1989)("`Equity always looks to the substance of a transaction and not to mere form'; and seeks to prevent injustice"(Citations omitted)).
Applying equitable principles, the court orders the plaintiff to pay interest on the purchase price of $395,000. While the defendant argues that General Statutes § 37-3a applies to this case, the court does not agree. As the Supreme Court recently noted in Blakeslee Arpaia Chapman, Inc. v. EI Const.,Inc., 239 Conn. 708, 734-35 (1997),
 "The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court. . . . Before awarding interest, the trial court must ascertain whether the defendant has wrongfully detained money damages due the plaintiff. . . . Interest on such damages ordinarily begins to run from the time it is due and payable to the plaintiff. . . . The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule." (Citations omitted; internal quotation marks omitted.) West Haven Sound Development Corp. v. West Haven, 207 Conn. 308, 321, 541 A.2d 858
(1988). A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated. Metcalfe v. Talarski, 213 Conn. 145, 160, 567 A.2d 1148 (1989); West Haven Sound Development Corp. v. West Haven, supra, 207 Conn. 321.
The plaintiff has not wrongfully detained money (the purchase CT Page 12325 price) from the defendant. Accordingly, the court orders the plaintiff to pay interest of 8% pursuant to General Statutes § 37-1 from October 15, 1990, and the interest shall be calculated on a descending basis to the date when the balance was paid in full.
As found by this court in its prior ruling, the plaintiff was entitled to purchase the property on October 15, 1990 and was ready, willing and able to do so. The unfortunate consequences of the defendant's refusal to perform under the contract are no attributable to any misconduct by the plaintiff.
 The rule we have applied under similar circumstances is that "the vendee, if he so elects, is not only entitled to have the contract specifically performed to the extent of the vendor's ability to comply therewith by requiring him to give the best title he can or convey what he has, but he may compel the vendor to convey his defective title or deficient estate, and at the same time have a just abatement out of the purchase price for the deficiency of title, quantity, or quality of the estate to compensate for the vendor's failure to perform the contract in full. . . . [T]he court may confine the vendee's relief to damages, where under the circumstances the granting of specific performance would be inequitable, particularly where the rights of third parties are concerned." Schneidau v. Manley, supra, 289. Since no third parties are here involved, the form of relief to be accorded must take into account the plaintiff's preference as well as the court's own discretion, "depending upon the equities of the case and based on reason and sound judgment." Id.
Botticello v. Stefanovicz, 177 Conn. 22, 33-34 (1979). The court enters the following orders pursuant to its decree of specific performance and in accordance with this decision:
1. The plaintiff's payments to the defendant for the period October 15, 1990 through June 30, 1995, which total $398,142, are credited against the purchase price of $395,000.
2. The plaintiff shall pay the defendant interest on the CT Page 12326 purchase price, adjusted to reflect the abovementioned monthly payments, at the rate of 8% a year.
3. No rent or use and occupancy is owed for the period after October 15, 1990.
4. The plaintiff is responsible for payments pursuant to General Statutes § 12-19a for the period October 16, 1990 to the present.
5. The parties shall share equally in the payment of unpaid interest and lien fees as to taxes and sewer charges.
6. The plaintiff shall pay the defendant $2,442.28, representing the sewer charges paid by the defendant after October 15, 1990.
7. The plaintiff is responsible for any unpaid sewer charges since October 15, 1990.
8. The defendant shall deliver to the plaintiff at the defendant's expense a complete abstract of title or other evidence of title satisfactory to the plaintiff.
9. The defendant shall also furnish at its expense an up-to-date survey by a licensed and registered professional engineer or surveyor showing elevation of property and corners marked with monuments.
10. The defendant shall prepare and deliver a good and sufficient warranty deed conveying the premises free and clear of all encumbrances.
11. The transaction shall be completed as ordered within sixty days of the notice of this decision.
DiPentima, J.