# GEBREHIWET MOKONNEN *v.* PRO PARK, INC.
## (AC 28984)

Harper, Beach and Pellegrino, Js.

Argued November 18, 2008—officially released April 21, 2009

*John T. Bochanis*, for the appellant (plaintiff).

*David S. Rintoul*, with whom was *Jessica Braun*, law clerk, for the appellee (defendant).

*Opinion*

HARPER, J. The plaintiff, Gebrehiwet Mokonnen, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant, Pro Park, Inc. On appeal, the plaintiff claims that the court's interrogatories to the jury were erroneous. We decline to review the plaintiff's claim and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history underlying the plaintiff's appeal were set forth by this court following an earlier appeal. "The plaintiff, a Christian from Eritrea, began working for the defendant in 1993 as a security guard in a parking garage located adjacent to a Caldor store in Stamford. Isias Yohannas, also an Eritrean Christian, supervised the plaintiff. In about 1997, Fuad Hrezi, a Muslim, was appointed the manager of all of the defendant's facilities in Stamford. At some point in 1997 or 1998, the first time Hrezi met the plaintiff, Hrezi asked whether he was a Christian or a Muslim. Hrezi also asked the plaintiff how long he had lived in Connecticut and New York. The plaintiff did not feel threatened by the conversation.

"On May 27, 1999, Hrezi notified the plaintiff that there were no more hours for him to work. Hrezi also told the plaintiff that there were no hours available in the defendant's other facilities in Stamford and, therefore, his employment was terminated. As a result of the discharge, the plaintiff applied for unemployment benefits, and the defendant submitted a statement indicating as the reason for the plaintiff's termination that 'Caldor's store closed out and there are no hours for him there or at other Pro Park locations in Stamford.'

"In October, 1999, the plaintiff went to the Caldor's garage and found that it was still open. He saw individuals he believed to be new employees working for the defendant and noted that Rachid Mokhtari, a Muslim

who had been hired subsequent to the plaintiff's discharge, was working there. The plaintiff approached Hrezi and asked him for work. Hrezi told him that there was no opening for him in Stamford, but that he could go to Greenwich where Yohannas could give him some hours. When the plaintiff spoke with Yohannas, he was told that he could not give him a job because 'they're hiring all of these Muslims' and that he did not have the authority to hire the plaintiff. Yohannas gave the plaintiff a telephone list of managers and made reference to the number of managers who were Muslims. After the plaintiff's discharge for lack of work, the defendant hired more than seventy individuals to work at its Stamford facilities and, in 1999, from the date of the plaintiff's discharge to the end of the year, two-thirds of the twenty new employees were Muslim.

"The plaintiff filed a complaint with the commission on human rights and opportunities (commission), alleging that he was discriminated against on the basis of his religion. After a fact-finding hearing, the commission concluded that probable cause existed that the defendant discriminated against the plaintiff on the basis of his religion. The plaintiff then filed this action, alleging, in the first count, that the defendant's actions constituted a discriminatory employment practice in violation of General Statutes § 46a-60 (a) (1) and, in the second count, negligent misrepresentation, claiming that the defendant had falsely informed the plaintiff that his discharge was due to lack of work. The case was tried to the jury, which found in favor of the plaintiff on both counts of his amended complaint, awarding $103,550 on the discrimination claim and $75,000 on the negligent misrepresentation claim. The court denied the defendant's motion to set aside the verdict, but ordered a remittitur of $35,000 on the discrimination count. The defendant did not accept the remittitur. The court subsequently rendered judgment in favor of the plaintiff

for $163,097.53, including attorney's fees and costs." *Mokonnen* v. *Pro Park, Inc.*, 96 Conn. App. 625, 627–29, 901 A.2d 725, cert. denied, 280 Conn. 924, 908 A.2d 1088 (2006).

After the defendant appealed to this court, we reversed the judgment of the trial court and remanded the case for a new trial because the trial court improperly charged the jury on the religious discrimination claim. This court also directed the trial court to render judgment in favor of the defendant on the negligent misrepresentation claim because there was insufficient evidence to support a verdict in the plaintiff's favor on that claim. Id., 634. Following remand, the case was retried to the jury. The jury returned a verdict, supported by answers to interrogatories, in favor of the defendant on the religious discrimination claim.[1] Thereafter, the plaintiff filed a motion to set aside the verdict or, in the alternative, for a new trial, on several grounds. The plaintiff argued that the jury interrogatories were misleading with regard to his burden of proof. The plaintiff noted that the jury's analysis was governed by the burden shifting test set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–803, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973),[2] which has a sequence of questions. The plaintiff asserted that the interrogatories

[1] The first interrogatory provided: "Do you find that the plaintiff . . . has proven, by a fair preponderance of the evidence, that he was discharged from employment by the defendant . . . due to a discriminatory employment practice (his religious creed), in violation of [§] 46a-60 (a) (1) of the General Statutes?" The jury answered, "No," went no further with the last two interrogatories, and the jury foreperson signed the defendant's verdict form. The unanswered interrogatories provided: "Do you find, by a preponderance of the evidence, that the discharge from employment of [the plaintiff] was motivated by a discriminatory reason (religious creed)?" and "Do you find, by a fair preponderance of the evidence, that the reason given by the defendant . . . was a pretext for discrimination (religious creed)?"

[2] "Under [the burden shifting] analysis of [*McDonnell Douglas Corp.*], the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a

guided the jury to answer the questions of the *McDonnell Douglas Corp.* burden shifting test out of sequence. He maintained that because the interrogatories did not follow the sequence of the analysis in the *McDonnell Douglas Corp.* test, the jury's analysis was flawed. As a result, the plaintiff argued, he was required to prove beyond a minimal level of proof that the defendant discriminated against him. See footnote 2. He argued that the interrogatories effectively required him to show an actual motivation to discriminate by the defendant as his initial burden of proof. At the hearing on the motion, the court concluded that the jury "had evidence before it from which it could have found that there [was] no discriminatory intent, there was no act of discrimination and, therefore, answered the first question in the negative" and denied the plaintiff's motion. The court then rendered judgment in favor of the defendant. This appeal followed. Additional facts will be set forth as necessary.

The plaintiff's sole claim on appeal is that the court's jury interrogatories were erroneous.[3] In opposition, the

pretext and that the decision actually was motivated by illegal discriminatory bias." (Internal quotation marks omitted.) *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 220, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008). "The level of proof required to establish a prima facie case is minimal and need not reach the level required to support a jury verdict in plaintiff's favor." (Internal quotation marks omitted.) Id.

[3] At oral arguments before this court, the plaintiff asserted that his appeal arose from the denial of his motion to set aside the verdict or, in the alternative, for a new trial. In his brief, however, the plaintiff does not challenge the denial of his motion. In fact, the plaintiff stated in his brief that the "instant appeal" arose from the jury verdict in favor of the defendant. In addition, the plaintiff cites no facts from the hearing on the motion and provides no legal analysis in support of an argument that the court improperly denied his motion. We decline to review this claim that was not briefed and was raised for the first time at oral arguments. See *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) (issues mentioned but not briefed beyond assertion deemed waived); *State* v. *Louise-Julie*, 60 Conn. App. 837, 841 n.4, 762 A.2d 913 (2000) (claims not briefed not entitled to review), cert. denied, 255 Conn. 929, 930, 767 A.2d 102, 103 (2001).

defendant submits that because the plaintiff's claim was unpreserved for appeal, this court is not bound to review the claim in view of the fact that the plaintiff failed to request plain error review. We agree with the defendant.

The plaintiff argues that the jury interrogatories represented an erroneous reflection of the *McDonnell Douglas Corp.* burden shifting test. Nonetheless, at the close of the evidence and before the court charged the jury, the plaintiff was afforded ample opportunity to review and to object to the jury interrogatories. At oral arguments before this court, the parties conceded that copies of the interrogatories were distributed to the parties for approval. In addition, the record reflects and the parties conceded at oral arguments that the plaintiff did not object to the interrogatories. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . [S]ee also Practice Book § 60-5 (court not bound to consider claim unless it was distinctly raised at the trial)." (Citation omitted; internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 531–32, 955 A.2d 667 (2008).

Furthermore, the defendant distinctly raised in the trial court an issue with respect to the interrogatories. It suggested to the court that the interrogatories be amended to add a line for future damages. The parties discussed the interrogatories with the court, as a result of which the court amended the interrogatories to reflect the suggestion made by the defendant. In addition, following the reading of the jury charge, during which the interrogatories were read to the jury, the court invited exceptions from the parties. Neither party provided an exception. We may presume from the plaintiff's repeated failure to object to the interrogatories

that he agreed to their content and their submission to the jury. See *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 317, 541 A.2d 858 (1988). The plaintiff's claimed error was never distinctly raised at trial, and, accordingly, it was not preserved for appeal.

We note that the plaintiff has not requested plain error review of his unpreserved claim. See Practice Book § 60-5 ("[t]he court may in the interests of justice notice plain error not brought to the attention of the trial court"). We therefore do not consider his claim under that doctrine. See *Payton* v. *Payton*, 103 Conn. App. 825, 827 n.1, 930 A.2d 802 (where unpreserved issue raised for first time on appeal and plaintiff did not request review under any doctrine by which this court may review unpreserved claims, court declined to address it), cert. denied, 284 Conn. 934, 935 A.2d 151 (2007); *State* v. *Marsala*, 93 Conn. App. 582, 590, 889 A.2d 943 ("This court often has noted that it is not appropriate to engage in a level of review that is not requested. . . . When the parties have neither briefed nor argued plain error . . . we will not afford such review." [Internal quotation marks omitted.]), cert. denied, 278 Conn. 902, 896 A.2d 105 (2006).

The judgment is affirmed.

In this opinion the other judges concurred.