JOHN A. MCCOOK *v.* WHITEBIRCH
CONSTRUCTION, LLC, ET AL.

WHITEBIRCH CONSTRUCTION, LLC *v.*
JOHN A. MCCOOK ET AL.

LENIHAN LUMBER COMPANY *v.* JOHN A.
MCCOOK ET AL.
(AC 30144)

Gruendel, Beach and Peters, Js.

 

Argued June 3—officially released September 29, 2009

*Frank P. Cannatelli,* for the appellant (plaintiff in the first case, named defendant in the second and third cases).

*Laura B. Seder,* with whom was *Richard J. Pascal,* for the appellees (plaintiffs in the second and third cases).

*Opinion*

BEACH, J. John A. McCook[1] appeals from the judgments of the trial court granting the motions to enforce

---

[1] McCook's appeal arises out of three separate actions involving construction services at his New London residence. McCook is the plaintiff in an action against Whitebirch Construction, LLC, alleging breach of contract and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. McCook is the defendant in a separate action by Whitebirch Construction, LLC, to foreclose its mechanic's lien on his property and in a third, separate action brought by Lenihan Lumber Company to foreclose its mechanic's lien on his property. The actions have been consolidated. We refer to the parties as McCook, Whitebirch and Lenihan.

a settlement agreement brought by Whitebirch Construction, LLC (Whitebirch), and Lenihan Lumber Company (Lenihan).[2] On appeal, McCook claims that the court improperly (1) declined to admit certain checks into evidence at the hearing on the motions to enforce the settlement agreement, (2) found the terms of the settlement agreement to be clear and unambiguous, (3) granted Lenihan relief beyond the scope of the settlement by awarding it attorney's fees and interest, (4) refused to articulate its reasons for declining to admit the checks into evidence and (5) unconstitutionally denied him a fair trial by (a) refusing to allow him to finish testifying and (b) at the time the case was reported to be settled, failing to canvass the parties to determine whether they understood the terms of the settlement agreement.[3] We affirm the judgments of the trial court.

The record reveals the following facts and procedural history. McCook, the property owner, and Whitebirch, the general contractor, entered into a contract for construction of a home at 490 Pequot Avenue in New London. A dispute arose between McCook and Whitebirch

[2] McCook's complaint in the first action against Whitebirch also included John Tortorigi as a defendant. McCook later withdrew the action as against Tortorigi. In the second action, Whitebirch included as a defendant Regional Stairs, LLC. In the third action, Lenihan included as defendants Whitebirch, Sean McFadden and Regional Stairs, LLC. McFadden and Regional Stairs, LLC, are not parties to this appeal.

[3] We note at the outset that McCook's brief and reply brief both fail to comply with the requirements of Practice Book § 67-4. In the discussions of the majority of his claims, the briefs do not contain a standard of review that McCook believes should be applied. Further, the briefs contain discussions of facts and case citations that are not always consistent with the statement of issues or headings. On the basis of the briefs and the record, however, "we will nonetheless review all claims which are fairly presented, or at least, reasonably discernible, upon the record before us." (Internal quotation marks omitted.) *Perlmutter* v. *Johnson*, 6 Conn. App. 292, 505 A.2d 13, cert. denied, 200 Conn. 801, 509 A.2d 517 (1986), cert. denied, 479 U.S. 1035, 107 S. Ct. 886, 93 L. Ed. 2d 839 (1987).

during construction, and three related civil actions followed. The first action was brought by McCook against Whitebirch. It alleged, inter alia, breach of contract and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (first action). Whitebirch then brought a separate action against McCook to foreclose its mechanic's lien (second action). Lenihan, a supplier of materials, also brought suit against McCook to foreclose its mechanic's lien (third action). Whitebirch filed a motion to consolidate its lien foreclosure action with Lenihan's lien foreclosure action. The motion was granted on March 16, 2007. In September, a pretrial conference was scheduled in the first action. The court, *Hon. Seymour L. Hendel*, judge trial referee, decided that all of the parties in the three cases should meet together to attempt to arrive at a global settlement. A second pretrial conference was scheduled for October 26, 2007. At the conclusion of that conference, counsel for McCook,[4] Whitebirch and Lenihan reported to the court, *Martin, J.*, that a global settlement agreement had been reached in all three cases. Gregory Harris, McCook's attorney, followed up with a letter memorializing the agreement.

The letter prepared by Harris states the contents of the settlement agreement. McCook agreed that he would pay Lenihan $20,000. The parties agreed to execute and to deliver releases in favor of the other parties. Whitebirch and Lenihan agreed to withdraw their cases against McCook and to deliver executed releases of their certificates of mechanic's liens and lis pendens. McCook agreed to withdraw his case against Whitebirch. Pursuant to the orders of the court, the

---

[4] McCook's counsel at the pretrial conference was Gregory Harris, who does not represent him on appeal. Harris entered his appearance for McCook prior to the pretrial conference and was replaced by McCook's current counsel prior to the hearing on the motions to enforce the settlement agreement.

terms of the settlement were to be executed within thirty days.

The settlement agreement, however, was not implemented. On November 21, 2007, Lenihan brought a motion to enforce the settlement agreement in the third action. Two days later, Whitebirch also brought motions to enforce the settlement agreement in both the first and second actions. The court held a hearing on these motions. Finding that there was an enforceable settlement agreement, the court, *Peck, J.*, granted the motions to enforce the settlement agreement on January 16, 2008. On January 30, 2008, Lenihan filed a motion seeking not only an order of enforcement of the agreement, but also interest and attorney's fees arising from its motion to enforce the agreement. Lenihan's motion was granted on June 9, 2008. Judgments were rendered in favor of Whitebirch and Lenihan, and this appeal followed.

I

We begin by addressing McCook's claim that the court improperly refused to admit certain cancelled checks, alleged to be evidence of fraud, at the hearing on the motions to enforce the settlement agreement. We disagree.

The following additional facts are relevant to our resolution of McCook's claim. On the first day of the hearing, McCook testified about events that took place the day after the settlement agreement was reached, when he reviewed certain cancelled checks that he had written to pay Whitebirch. Over Whitebirch's objection, McCook was permitted to provide testimony regarding checks that he had paid to Whitebirch. Judge Peck instructed McCook that the checks would be relevant only if they tended to show whether McCook was misled

at the time of the settlement conference. McCook testified that he did believe that he was misled at the settlement conference, but he stated that he did not understand at the time he entered into the settlement agreement that it included his CUTPA claim against Whitebirch in the first action. He also testified that due to the volume of discovery, he had not had an opportunity before the conference to examine and to analyze the checks that had been provided in response to a discovery request by his former attorney. Counsel for Whitebirch again objected to any discussion regarding any checks. Whitebirch stated that McCook had been provided with copies of these checks well in advance of the settlement conference. McCook argued that these checks had been provided by a bank in response to an authorization executed by Whitebirch and were, in fact, different from the checks provided by Whitebirch previously. McCook did, however, state that he had received the checks from the bank about one week before the settlement conference. McCook testified that although he had the checks before the conference, he needed time to analyze them. He argued that his analysis of the checks, performed after the settlement agreement, indicated that Whitebirch had used proceeds of checks he provided to pay for construction on another project called "Rattlesnake."[5] The court sustained objections to their admission on the ground that they were not relevant to "whether . . . the parties agreed on the terms and conditions in the settlement and whether . . . those were sufficiently clear at the time of the settlement."[6]

[5] The "fraud" claimed apparently is that Whitebirch deceptively used McCook's money to pay bills arising from another project. We express no opinion as to whether and in what circumstances such behavior might be fraudulent.

[6] McCook raised an entirely new argument at oral argument before this court. He argued that he intended to introduce the checks as evidence that he did not intend to settle the count of his complaint alleging a violation of CUTPA. This claim was different from his position in his appellate brief that the checks should have been admitted as evidence of fraud in order

We begin our analysis by setting forth our standard of review. "It is well settled that we will set aside an evidentiary ruling only when there has been a clear abuse of discretion." (Internal quotation marks omitted.) *Kalams* v. *Giacchetto*, 268 Conn. 244, 249, 842 A.2d 1100 (2004). "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 406, 880 A.2d 151 (2005).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree,

---

to void the settlement agreement. We decline to review this claim that was not briefed and was raised for the first time at oral arguments. See *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) (issues mentioned but not briefed beyond assertion deemed waived); *Mokonnen* v. *Pro Park, Inc.*, 113 Conn. App. 765, 769 n.3, 968 A.2d 916 (2009) (same); *State* v. *Louise-Julie*, 60 Conn. App. 837, 841 n.4, 762 A.2d 913 (2000) (claims not briefed not entitled to review), cert. denied, 255 Conn. 929, 930, 767 A.2d 102, 103 (2001).

so long as it is not [unfairly] prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 542–43, 821 A.2d 247 (2003).

We conclude that the court did not abuse its discretion in refusing to admit the checks into evidence on the basis of relevance. Although the checks might have been relevant in the underlying action, they were not relevant to any disputed issue in the hearing on the motions to enforce the agreement. There may of course be situations in which one party fraudulently induces another to settle, and evidence of such would of course be relevant, but there was no credible evidence presented in this case that the settlement was entered into fraudulently, and the checks were not relevant for that purpose. A settlement agreement is a contract; see *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993); and the court did not err in deciding that the checks were not relevant to the validity or terms of that contract.

II

McCook next claims that the court improperly granted the motions to enforce the settlement agreement. McCook argues that the court improperly found that the settlement agreement was clear and unambiguous because he did not understand the settlement agreement to have included his CUTPA claim against Whitebirch and that he was required to withdraw the CUTPA claim pursuant to the agreement. We conclude that the court did not err in determining that the terms of the agreement were clear and unambiguous.

The following additional facts are relevant to our resolution of McCook's claim. Two witnesses testified at the hearing on the motions to enforce the settlement agreement. On the first day of the hearing, McCook

testified about his understanding of the settlement agreement. When asked on direct examination "whether it was [his] understanding that [he] was going to pay $20,000 and that would include [his] case against Whitebirch," McCook answered: "Yes, all cases at the time." On the second day of the hearing, McCook's former attorney, Harris, testified about the settlement negotiations that had occurred at the pretrial conference on October 26, 2007. Harris testified that McCook appeared to understand the terms of the settlement at that pretrial conference. He also testified that during their conversation, McCook questioned whether Judge Hendel took the evidence of fraud into consideration when negotiating the settlement. Upon learning that Judge Hendel was aware of the fraud claim, McCook indicated to Harris that he was willing to settle under the proposed terms. McCook's former attorney testified that he then indicated to Judge Martin that an agreement had been reached.

On the basis of the evidence and the testimony presented, the court determined that "there was no question that . . . McCook understood that the cases were being settled that day [and] that the terms of the settlement were certainly clear and unambiguous as they were articulated by . . . McCook's own counsel." The court further stated that "there were numerous inconsistencies about what [McCook] says took place . . . in the days following that hearing." Accordingly, the court granted the motions to enforce the settlement agreement.

"A settlement agreement is a contract among the parties. . . . It is well settled that [w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the

determination of what the parties intended by their contractual commitments is a question of law. . . . The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is [plenary]." (Citation omitted; internal quotation marks omitted.) *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.*, 114 Conn. App. 290, 294, 970 A.2d 730 (2009).

McCook argues that the court improperly concluded that he intended to settle all three cases at the time of settlement. McCook cites several instances in the transcript where he testified that he was not aware that he was settling the CUTPA claim in the global settlement agreement. He also argues that the settlement agreement was particularly confusing because it encompassed three different cases. We are not persuaded.

Contrary to McCook's argument, the record supports the court's finding that the parties reached a mutual understanding with respect to the settlement agreement. During the hearing on the motions to enforce the settlement agreement, McCook admitted that, at the time of the settlement, he believed that all three cases were being settled in the agreement. The court specifically found McCook's testimony about his CUTPA claim not credible. His former attorney, Harris, also testified that he explained the terms of the settlement agreement to McCook, and it was his belief that McCook understood the terms of the settlement agreement. "The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact." (Internal quotation marks omitted.) *Wasniewski* v. *Quick & Reilly, Inc.*, 292 Conn. 98, 103, 971 A.2d 8 (2009). The court's finding that, at the time of settlement, McCook understood that the settlement agreement encompassed all of his claims against Whitebirch in addition to the lien foreclosure actions

was legally and logically correct. Accordingly, we conclude that the court's finding that the terms of the settlement agreement were clear and unambiguous was not improper.[7]

## III

McCook also claims that the court improperly granted relief beyond the scope of the settlement agreement. He argues, for the first time on appeal, that even if the settlement agreement is enforceable, the court nonetheless could not properly award attorney's fees and interest. We decline to review this claim because it has not been preserved.

In its motion to enforce the settlement agreement, Lenihan requested that the court order McCook to pay interest and Lenihan's attorney's fees incurred in finalizing the settlement, as well as in preparing and pursuing the motion. The court's initial ruling on the motion to enforce the settlement agreement did not address these prayers for relief. Lenihan filed a motion for judgment requesting that the court award attorney's fees in the amount of $3269.75 and interest in the amount of $372.64. On June 9, 2008, the court granted Lenihan's motion for judgment and awarded attorney's fees in the amount of $2500 and interest in the amount of $695.96.

Because McCook's claim that the court improperly awarded attorney's fees and interest was not raised in the trial court by objection or otherwise, it is not preserved for our review on appeal. See *State* v. *Coccomo*, 115 Conn. App. 384, 394, 972 A.2d 757, cert. granted on other grounds, 293 Conn. 909, 978 A.2d 1111

---

[7] Harris, acting as McCook's agent, circulated in his letter the clear and simple terms of the settlement. There is no apparent reason why McCook would not be bound by his agent's statements in any event.

The terms of the agreement as expressed in the letter, and as explained in the testimony before the court, were clear and unambiguous. The court also decided that McCook understood the terms at the time of the settlement—a different though related issue.

(2009). In addition, on appeal, McCook mentioned attorney's fees in passing, but provided no analysis or rationale for our considering the unpreserved claim. "Connecticut law is clear that a party seeking review of unpreserved claims under either the plain error doctrine; Practice Book § 60-5; or *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), must affirmatively request such review." *State* v. *Wheatland*, 93 Conn. App. 232, 243–44, 888 A.2d 1098, cert. denied, 277 Conn. 919, 895 A.2d 793 (2006). McCook has not requested such review, and his claim, therefore, fails.[8]

## IV

McCook further claims that the court improperly denied his motion to articulate its reasons for denying his motion to reconsider. We conclude that this claim is not reviewable on appeal.

The following additional facts and procedural history are relevant to our discussion of this issue. On January 30, 2008, McCook filed a motion to reconsider. In his motion to reconsider, McCook stated that he should have been permitted to enter the cancelled checks into evidence as evidence of fraud. McCook also stated that had he been able to enter the checks into evidence, they would have proven fraud perpetrated by Whitebirch on McCook, thereby, according to McCook, rendering the settlement agreement voidable. McCook's motion to reconsider was denied without a hearing. Upon receiving the denial of his motion to reconsider, McCook filed a motion for articulation on February 13, 2008. In his motion for articulation, McCook requested that the court "clearly and succinctly articulate the reasons for [its] denial of [McCook's] motion to reargue." The court denied McCook's motion on March 3, 2008. McCook

---

[8] It is unlikely that the issue satisfies the manifest injustice standard as stated in such cases as *State* v. *Coward*, 292 Conn. 296, 306, 972 A.2d 691 (2009), or is of a constitutional nature.

did not file a motion for review of the court's denial of his motion for articulation.

Practice Book § 66-5 states in relevant part: "The sole remedy of any party desiring the court having appellate jurisdiction to review the trial court's decision on the motion filed pursuant to this section or any other correction or addition ordered by the trial court during the pendency of the appeal shall be by motion for review under Section 66-7. . . ." Practice Book § 66-7 provides in relevant part: "Any party aggrieved by the action of the trial judge as regards . . . articulation under Section 66-5 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . ." Because McCook failed to pursue this remedy available to him, we decline to review his claim. See *Ramondetta* v. *Amenta*, 97 Conn. App. 151, 168, 903 A.2d 232 (2006); *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 180, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998).

V

McCook's final claim is that he was denied his right to be heard in violation of the fourteenth amendment to the United States constitution and article first, § 8, of our state constitution. In particular, McCook appears to argue that he should have been permitted to testify on the second day of the hearing on the motions to enforce the settlement agreement[9] and that Judge Martin should have canvassed the parties at the pretrial conference to ensure that they understood the terms

[9] Neither reason nor persuasive authority are presented in McCook's brief with respect to his claim, and we decline to review it. *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003).

of the settlement agreement at the time it was made. McCook seems to urge us to impose a bright line rule requiring canvasses of parties regarding settlement agreements at the time they are entered into. We decline to do so: a settlement agreement is simply a contract, and traditional principles apply. McCook cites no authority in support of his proposition, and we have found none.[10]

The judgments are affirmed.

In this opinion the other judges concurred.

---

[10] In his brief, McCook briefly mentions the state constitution as one basis for his unfair hearing claim. He does not, however, provide any independent analysis of the state constitutional claim, as required under *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992), and we, therefore, deem it abandoned. As stated by our Supreme Court: "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 55 n.36, 970 A.2d 656 (2009).