******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************************

JOSEPH GARTRELL ET AL. *v.* CITY OF
HARTFORD ET AL.
(AC 39687)

Alvord, Keller and Bright, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendant city of Hartford
for alleged violations of the state building code in connection with a
residential building owned by the plaintiffs that had sustained substantial
damage following a fire. After the fire, it was determined, under the
state building code, that imminent danger to the public existed that
required immediate action, and the city, after providing notice to the
plaintiffs, retained a company to demolish the building. The trial court
granted the city's motion for a directed verdict, in which the city claimed
that the plaintiffs had not carried their burden of proof with respect to
showing that the city did not act under an emergency when it ordered
the plaintiffs' building to be demolished. The court initially had reserved
decision on the motion and, subsequently, after discussion with counsel,
provided the jury with a single interrogatory asking whether it found
that the city and its officials could believe that an imminent danger or
emergency existed that allowed it to demolish the plaintiffs' building.
After the jury answered the interrogatory in the affirmative, the trial
court granted the city's motion for a directed verdict and rendered
judgment in favor of the city, from which the plaintiffs appealed to this
court. On appeal, they claimed that in order to permit the trial court to
properly render a directed verdict on the basis of the jury interrogatory,
the interrogatory would have been required to ask the jury to find
whether the city had proved that it actually did believe that an imminent
danger or emergency existed, and not whether it was a belief that could
have been held by the city. *Held* that the plaintiffs' unpreserved claim
that the trial court erred in directing the verdict in favor of the city on
the basis of the jury's answer to a single interrogatory was not review-
able, the plaintiffs having failed to raise the issue to the court on the
record, either before or after the jury was charged, or as a basis for
denying the city's motion for a directed verdict; the trial court had met
with counsel in chambers, prior to its instructions to the jury, and
explained the procedure it planned to follow, the court did, in fact,
follow the procedure discussed when the trial resumed, and although
the plaintiffs' counsel had ample opportunity to object to the court's
procedure, the plaintiffs' counsel acquiesced in that procedure by, inter
alia, failing to object even though the court read the interrogatory to
the jury during its charge and subsequently invited exceptions from
the parties.

Argued January 25—officially released June 12, 2018

*Procedural History*

Action to recover damages for, inter alia, violations
of the state building code with respect to certain real
property, and for other relief, brought to the Superior
Court in the judicial district of Hartford, where the
action was withdrawn as to the defendant Environmen-
tal Services, Inc.; thereafter, the matter was tried to the
jury before *Berger, J.*; subsequently, the court granted
the named defendant's motion for a directed verdict
and rendered judgment for the named defendant, from
which the plaintiffs appealed to this court. *Affirmed.*

*John R. Williams*, for the appellants (plaintiffs).

*Demar G. Osbourne*, assistant corporation counsel,
for the appellee (named defendant).

*Opinion*

ALVORD, J. The plaintiffs, Joseph Gartrell, 481 Albany Avenue, and Wonder Package, LLC, appeal from the judgment of the trial court granting the motion for a directed verdict in favor of the defendant city of Hartford (city).[1] The plaintiffs claim that the trial court erred in directing a verdict for the city on the basis of the jury's answer to a single interrogatory. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiffs owned a mixed-use commercial and residential building located at 481 Albany Avenue in Hartford (building). The first floor of the building was occupied by a liquor store, which was owned by Gartrell, and a delicatessen, and the second and third floors consisted of two units each of residential apartments.

On Saturday, February 12, 2011, at 6:15 a.m., a nonresident who was present in the building started a fire on the third floor, using gasoline as an accelerant. The Hartford Fire Department (department) responded, and Gregory Simon, an officer with the department, authorized firefighters to enter the building. Firefighters had been alerted that a person was unaccounted for and that he was suspected to be in the third floor "left-hand apartment."[2] Firefighters attempted to reach the third floor but were forced back by "heavy fire" they encountered in the stairwell leading to the third floor. The fire engulfed structural members supporting the roof, which caused Simon concern that the roof was compromised. Simon also was aware that the building had heavy snow on the roof, which, combined with "the deteriorating roof members," caused "concern for imminent collapse." The third floor of the building became "fully involved," and the fire also started to envelop the second floor. One side of the building began to bow outward. As a result of the heavy fire, the department's safety officer, after consulting with the chief, ordered Simon's team to withdraw from the building, and a second team extinguished the fire from another location. Michael Fuschi, the Hartford building official, inspected the building on the day of the fire and determined that the roof rafters could "no longer support the original load by design." Temporary shoring was installed in order to permit officials to conduct their investigation.

Gartrell's commercial tenant called him on the morning of the fire and told him that the building was burning. Gartrell lived in Bloomfield and was ill at the time. He was not able to drive and did not go to the building until two days after he learned of the fire.

Also on the day of the fire, the city issued to Gartrell a notice of violation stating that the building had been deemed unsafe due to fire. The notice stated that the

city's inspector would hire a contractor to board up the building, and a bill would follow. It directed Gartrell to "make building safe or demolish building." Gartrell received and counter-signed the notice on February 14, 2011, the same day that Gartrell first went to the building after the fire. Gartrell had gone to the building to meet with a representative from his insurance company. The police initially did not permit Gartrell to enter the building but he later entered the building and looked up the stairs. While Gartrell was at the building, a representative of the city told him that they would board up the building. At some point after the fire and before the demolition, Gartrell spoke with a carpenter named Benjamin Brown about fixing the building, but Gartrell needed time for his insurance company to estimate the job, and neither Brown nor Gartrell had made any preparations or requested any permits to repair the building.

On the basis of his investigation, Fuschi had concluded by February 18, 2011, that under § 116.4 of the State Building Code,[3] imminent danger requiring immediate action existed, and he ordered the building to be demolished. On February 18, 2011, the city issued a second notice, signed by Fuschi, which stated: "[B]uilding to be demolished. Building poses imminent danger to public." Gartrell did not receive or counter-sign the second notice. The city retained Environmental Services, Inc., to demolish the building. Demolition began on February 19, 2011, and was completed on March 3, 2011.

The plaintiffs commenced the present action in February, 2013. In their operative complaint, the plaintiffs alleged in two counts against the city that, inter alia, the city violated §§ 115.3 and 116 of the State Building Code and General Statutes §§ 49-73b and 49-34, in that it failed to provide the plaintiffs with notice describing the conditions deemed unsafe, failed to specify the required repairs, and failed to provide adequate notice that the building would be demolished within a stipulated time. The plaintiffs further alleged that the city deprived them of due process of law by preventing them from accessing the building and retrieving its contents.[4]

At trial, the plaintiffs presented the testimony of Gartrell and Debra Nails, a tenant of the building. After the plaintiffs rested, the city moved for a directed verdict, arguing that the plaintiffs had not "carried the burden of proof with respect to showing that the city did not act under an emergency," and that the plaintiffs "offered no evidence whatsoever as to whether the plaintiff[s] [were] going to expeditiously render the premises safe." The plaintiffs' counsel objected, arguing that there were "substantial issues of negligence" and that the city officials needed to testify as to the issue of whether the city was justified in making the decision to demolish the building so quickly.[5] The court reserved decision

on the motion. The city then presented the testimony of Simon and Fuschi, and the plaintiffs recalled Gartrell in rebuttal. After the close of evidence, the city renewed its motion for a directed verdict, arguing that the plaintiffs had presented no evidence to challenge the city's evidence of an emergency. The plaintiffs' counsel objected, arguing that there was sufficient evidence, in the form of Gartrell's testimony that the building was not badly damaged, to present the issue to the jury. The court again reserved decision, and then stated: "All right. I'm going to follow the procedure that I discussed with you folks. Which means we will ask—provide the jury with this one interrogatory. And so we will have closing arguments and then charges on this issue." The city's counsel inquired of the court whether the jury would see the interrogatory before or after closing arguments, and the following exchange occurred:

"The Court: They will go in with an instruction from me.

"[The City 's Counsel]: Before or—

"The Court: You're allowed to say to them—you're allowed to argue that to them. . . . And I will help you out—both out by telling the jury that I am going to ask this question of them first. And then you'll be able to start your very short, abbreviated closing argument on this issue. And then back to [the city's counsel], and then back to [the plaintiffs' counsel], just as if we were doing a regular closing argument. I will give them a short charge on this. And give them that instruction. Okay?

"[The City's Counsel]: And the defendant first? And plaintiff last? I believe that's the order, unless I'm mistaken.

"The Court: It's plaintiff, defendant, plaintiff. Okay?

"[The City's Counsel]: Yes, sir.

"The Court: And one issue.

"[The City's Counsel]: Yes, sir.

"The Court: And we all understand. It's what we discussed earlier. Okay?

"[The City's Counsel]: Yes, sir."

The court then directed the clerk to bring the jury into the courtroom and addressed the jury as follows: "All right. So sometimes cases don't go exactly the way they do on television. This case has sort of been like that. There's been some delays. We're also going to do something different on this case. Normally at this point in time we would have closing arguments, I would charge you, you would make a decision. We're not going to do that. We're going to do something different. And that is, we are going to have abbreviated closing arguments and an abbreviated charge. And I'm going to send in an interrogatory that will ask you to answer one question. So you will, like any other jury, you will pick

your foreperson. And you will look at the exhibits. You will have deliberations. And you will sign and answer the interrogatory, which will require you to answer a question, yes or no. Okay? And because of certain laws in the state of Connecticut, I will then make some decisions. It is possible that there will be more work for you. It is possible that there will not be more work for you. I can't tell you that at the moment. But I need for you to answer questions for me as the fact finders. Okay. So that's what we're going to do. A little bit different than other cases. But that's okay. You are performing the role as the fact finder. Okay. I'm going to tell you what the question is. They're going to argue to you evidence based upon that and how they believe you should rule. But I'm going to tell you right now, so there's going to be no mystery here. Here's the question: Do you find that the evidence in this case—I'm sorry, let me restart. Do you find pursuant to the evidence in this case that the city and its agents and officials could believe that an imminent danger or emergency existed, allowing it to demolish the plaintiffs' building? That's the question. And you're going to have this in there with you. So, knowing the question, we're going to have closing arguments, and then I'm going to give you some instructions that I would give to any jury. Unfortunately, you may say, Judge Berger, I don't need all of your instructions to answer this question, but I feel like I should at least give you most of those instructions. So that will take a little bit of time. But we're going to start with plaintiffs' counsel on argument of evidence as to this question." The plaintiffs' counsel then replied: "Thank you, Your Honor." The court responded: "You bet."

The plaintiffs' counsel then began the plaintiffs' closing argument. She addressed the jury by stating: "As the judge instructs you, we are going to argue in the closing arguments about a limited issue of whether you feel that the city acted under emergency circumstances and whether those, that emergency imminent danger, justified the decision to demolish the building." After closing arguments, the court instructed the jury, in part: "My task is only to apply the rules of evidence and to instruct you on the law. It is for you to decide the question that we will be giving you. Again, it's your duty to follow those instructions and to conscientiously apply the law as I give it to you, so that you can decide that question."[6] At the end of its charge, the court stated: "Okay. So what will happen now? I will go over this interrogatory again. We call it a question to the jury, an interrogatory to the jury, and as I've indicated, I need you to answer this question for me: Do you find pursuant to the evidence in this case that the city and its agents and officials could believe that an imminent danger or emergency existed, allowing it to demolish the plaintiffs' building? Either yes or no, and the foreperson would sign it."

The court inquired of counsel whether they had any exceptions to its charge, and both counsel responded that they did not. The jury then retired for deliberations. After further deliberations the next morning, the jury answered the interrogatory in the affirmative. After accepting and recording the jury's answer, the court addressed counsel and stated that it would return to the city's motion for a directed verdict. The court asked counsel whether there was "anything you would like to say in furtherance of that," to which both the plaintiffs' counsel and the city's counsel responded: "No, Your Honor." The court then issued the following oral ruling: "All right. In light of both the decision in *Brown* v. *Hartford*, 160 Conn. App. 677, [127 A.3d 278, cert. denied, 320 Conn. 911, 128 A.3d 954 (2015)], and in light of our governmental immunity [statute], [General Statutes §] 52-557n, the verdict is directed in this case, which means that the city defendant has won this case. There is nothing more to deliberate in this case because of that finding, because, as I say, the Appellate Court's recent decision in 2015 and, of course, in light of § 52-557n, which was the hurdle I had spoken to you all about before. So with that, I'm going to bring the jury out, discharge them, and this case is over. Okay? Thank you."[7] This appeal followed.

The plaintiffs' sole claim on appeal is that the trial court erred in directing a verdict in favor of the city "after the jury answered the single interrogatory submitted to it." Specifically, the plaintiffs claim that "[t]he court's direction of a verdict in this case was plainly erroneous because the jury interrogatory did not permit such a ruling. Had the jury concluded that the defendant had proved that the city of Hartford, through its agents, actually *did* believe that an imminent danger or emergency existed, the court would have been correct in directing a verdict." (Emphasis in original.) In other words, the plaintiffs' only contention on appeal is that in order to permit the court to render a directed verdict in this action on the basis of a jury interrogatory, the interrogatory would have been required to ask the jury to find "whether the defendant had proved that it actually did believe that an imminent danger or emergency existed," not "whether it was a belief that *could* have been held."[8] (Emphasis in original.) We conclude that the plaintiffs' claim was not properly preserved for appellate review, and, accordingly, we decline to address it.

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Guzman* v. *Yeroz*, 167 Conn. App. 420, 426, 143 A.3d

661, cert. denied, 323 Conn. 923, 150 A.3d 1152 (2016). "The purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing parties." *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 620, 99 A.3d 1079 (2014). "These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act." (Internal quotation marks omitted.) *Great Country Bank* v. *Ogalin*, 168 Conn. App. 783, 802, 148 A.3d 218 (2016). "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *McMahon* v. *Middletown*, 181 Conn. App. 68, 76, A.3d (2018).

Having thoroughly reviewed the transcripts,[9] we conclude that the plaintiffs failed to preserve their argument that the jury interrogatory, as written, did not permit the court to render a directed verdict because they failed to raise the issue to the trial court on the record, either before or after the jury was charged, or as a basis for denying the city's motion for a directed verdict. See *Mokonnen* v. *Pro Park, Inc.*, 113 Conn. App. 765, 770–71, 968 A.2d 916 (2009) ("[w]e may presume from the plaintiff's repeated failure to object to the interrogatories that he agreed to their content and their submission to the jury"). The plaintiffs conceded at oral argument before this court that the record reveals that the trial court had met with counsel in chambers and explained the procedure it planned to follow, and that the trial court, in fact, did follow the procedure discussed. The court referenced that conversation on the record but outside the presence of the jury on September 22, 2016, when it stated: "I'm going to follow the procedure that I discussed with you folks. Which means we will ask—provide the jury with this one interrogatory." Neither the parties nor the court described with any detail the conversation that occurred off the record. Thus, the record is silent, and this court is left to speculate, as to who might have proposed and drafted the interrogatory and whether any party had expressed during that conversation any disagreement either with the interrogatory or the court's procedure.

Over the course of two days, the plaintiffs' counsel had ample opportunity to object to the court's procedure, and, rather than object, the plaintiffs' counsel acquiesced in that procedure. First, after the jury returned to the courtroom on September 22, the court began its instruction by informing the jury that they were "going to do something different on this case" and that the jury would be asked to answer one question. It then explained that "because of certain laws in the state of Connecticut, I will then make some decisions.

It is possible that there will be more work for you. It is possible that there will not be more work for you." After reading the interrogatory to the jury, the court told the jury that closing arguments "as to this question" would begin with the plaintiffs' counsel, who responded by thanking the court rather than objecting.

Second, the plaintiffs' counsel not only referenced the interrogatory in her closing argument, but also failed to articulate the question properly herself, stating that counsel would be arguing the "limited issue of whether *you feel* that the city acted under emergency circumstances and whether those, that emergency imminent danger, justified the decision to demolish the building." (Emphasis added.) Later in her argument, she used similar language to that now challenged on appeal, arguing: "We did not hear enough information that justified that there was an emergency that would cause them to bypass all of the due process, all of the statutes, all of the different—safeguards that are there to protect someone's property. *There's no evidence showing that they could—could have exercised that discretion* without the abuse of power. And I would like you to consider that when you answer that question as to whether it was imminent, whether the city had authority to justify the degradation of property." (Emphasis added.)

Third, after closing arguments, the court further instructed the jury, referencing the interrogatory throughout. Upon completion of its instruction, the court specifically asked whether counsel had any exceptions to its charge, and the plaintiffs' counsel replied: "No, Your Honor." See *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 317, 541 A.2d 858 (1988) (declining to review unpreserved claim of allegedly erroneous jury interrogatories where interrogatories were read to jury during court's charge, trial court invited exceptions, and "[a]gain, the plaintiff allowed an opportunity for preserving this alleged claim of error to pass"); *Mokonnen* v. *Pro Park, Inc.*, supra, 113 Conn. App. 770 (holding that claim that jury interrogatories were erroneous was not preserved for appeal, in part, where despite trial court reading interrogatories to jury during its charge and inviting exceptions from parties, neither party took exception).[10] Finally, the next morning, after the jury had answered the interrogatory in the affirmative and the court had indicated its intention to return to the city's motion for a directed verdict, the court asked counsel whether there was "anything you would like to say in furtherance of that," to which both the plaintiffs' counsel and the city's counsel responded: "No, Your Honor."

Because the plaintiffs concededly were aware of the procedure the court planned to, and did, follow, and the record reveals that the plaintiffs made no claim before the trial court that the jury's answer to the interrogatory, as written, did not permit the court to render

a directed verdict, we conclude that the plaintiffs failed to preserve their claim for our review.[11]

For these reasons, we decline to review the plaintiffs' claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiffs also named Environmental Services, Inc., as a defendant in this action, but the complaint was withdrawn as to it prior to trial. Therefore, only the city is involved in this appeal.

[2] One resident died in the building.

[3] Section 116.4 of the State Building Code provides: "Emergency work. When imminent danger or an unsafe condition requiring immediate action exists and the owner of the building or structure cannot be located, or refuses or is unable to expeditiously render the premises safe, the building official shall order the employment of the necessary labor and materials to perform the required work as expeditiously as possible. Such work shall include that required, in the building official's sole opinion, to make the premises temporarily safe, up to and including demolition."

[4] In their second count, the plaintiffs alleged, inter alia, that the city demolished the building before conducting an investigation in accordance with General Statutes § 29-311. During oral argument before this court, the plaintiffs' counsel clarified that the plaintiffs appeal solely from the directed verdict as to the first count of their complaint.

[5] The following colloquy occurred:

"[The Plaintiffs' Counsel]: I would ask that that decision for directed verdict would be reserved, if anything, until the end of the trial.

"The Court: So you're saying that I should reserve my decision on this motion until after—

"[The Plaintiffs' Counsel]: Well, I'm asking for you to deny—

"The Court: You would like me to deny right now, I get that. But you've also suggested that I—if I'm thinking about it, I should reserve until after I have heard the witnesses of the city to determine whether or not the situation in which Mr. Osbourne [the city's counsel] is claiming actually existed.

"[The Plaintiffs' Counsel]: Yes, Your Honor.

"The Court: Okay. So how about if the testimony, in fact, shows that? Are you suggesting that if I were to find that the testimony of the city's witness shows that emergen[cy] situation, then I am able to rule on your motion? Are you agreeing that I can do that?

"[The Plaintiffs' Counsel]: Well, not exactly agreeing, Your Honor.

"The Court: You don't want me to do that, I get that.

"[The Plaintiffs' Counsel]: Well, Your Honor—

"The Court: Better to deny it right now. But you also suggested that I should wait to hear before I rule on it.

"[The Plaintiffs' Counsel]: I believe the jury should wait—should hear—

"The Court: I know that, too.

"[The Plaintiffs' Counsel]: —the evidence. Yes.

"The Court: But that's not what I'm asking you. You saying that instead of ruling right now, one of the things I could do is to defer until after I hear Mr. Osbourne's witnesses?

"[The Plaintiffs' Counsel]: Yes, Your Honor, I think that would be fair.

"The Court: So one possibility would be I deny it right now. Another possibility would be I wait and hear his witnesses and then I deny it. But another possibility would be I hear his witnesses and then I grant it.

"[The Plaintiffs' Counsel]: And what?

"The Court: I grant it.

"[The Plaintiffs' Counsel]: Okay.

"The Court: So I have those three options and you're saying I should wait before I do that, and that's okay with you?

"[The Plaintiffs' Counsel]: I prefer that—

"The Court: I know what you prefer.

"[The Plaintiffs' Counsel]: —at the end of—after the jury's verdict, because—I think would be a more appropriate time for counsel to revisit the motion for a directed verdict.

"The Court: Well, one thing for sure, is I'm not going to grant that motion now. I think there are some pieces to this puzzle that are missing. I'm going to reserve my options. Okay?

"[The Plaintiffs' Counsel]: Thank you, Your Honor.

"[The City's Counsel]: Thank you, Your Honor."

[6] Later in its charge, the court again referenced the interrogatory: "Let me say that I've asked you to answer a certain question. You have heard references by counsel to other matters, issues of ten days' of notice and things like that. Those issues, we are not addressing at this time. So you are to address only the issue. And the issue that is raised in terms of this interrogatory question, of whether or not an imminent danger or emergency exists, is actually something that was raised by the defendant and appropriately so. But, in fact, they have the burden of proof to prove that; that is their burden."

[7] On September 26, 2016, the court issued the following written order: "In light of the jury's answer to the interrogatory that the actions taken by the city were in response to an emergency, the defendant's oral motion for a directed verdict, taken under advisement, is hereby granted for two reasons. First, [the] plaintiffs' due process arguments found in the first count must fail pursuant to that emergency finding under *Brown* v. *Hartford*, [supra, 160 Conn. App. 692]; [they were] afforded postdeprivation due process in this trial. Second, as to the second count, the plaintiff[s] submitted no evidence that the city was not protected by governmental immunity under [§] 52-557n (a) (2) (B) and/or [§] 52-557n (b) (7) and (8)."

[8] The plaintiffs do not claim in their brief on appeal that a properly drafted interrogatory would have required language inquiring whether the city's belief was *reasonable* in order to permit the court to render a directed verdict on the basis of the interrogatory.

[9] We note that the motion for a directed verdict was made orally.

[10] Although the plaintiffs frame the issue presented in this appeal as a claim of error in the court's direction of a verdict rather than a claim of instructional error or a claim directly challenging the interrogatory as erroneous, we nevertheless find persuasive the cases declining to review unpreserved claims of allegedly erroneous jury interrogatories. See *West Haven Sound Development Corp.* v. *West Haven*, supra, 207 Conn. 317, and *Mokonnen* v. *Pro Park, Inc.*, supra, 113 Conn. App. 770. In the present case, the record is clear that the parties were well aware before the interrogatory was read to the jury of the procedure the court planned to follow, and the plaintiffs failed to raise, at that time or any other time, the distinct claim that the court could not properly direct a verdict on the basis of the jury's response to the interrogatory.

[11] In their brief on appeal, the plaintiffs failed to note that they had not preserved at trial the claim raised before this court, and they did not request that the claim be reviewed pursuant to any doctrine in exception to the preservation rule. The plaintiffs' brief on appeal does not meet the predicate for *Golding* review, as it neither has "present[ed] a record that is [adequate] for review" nor "affirmatively [demonstrated] that [the] claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 755, 91 A.3d 862 (2014). In their brief, the plaintiffs argued only that the court erred in directing a verdict because the interrogatory "did not permit such a ruling." The plaintiffs did not suggest, let alone demonstrate, that their claim involved a violation of a constitutional right. We further note that the plaintiffs did not affirmatively request in their brief relief under the plain error doctrine. "[I]t is well established that this court [is not obligated to] apply the plain error doctrine when it has not been requested affirmatively by a party . . . ." (Citations omitted; internal quotation marks omitted.) *Guzman* v. *Yeroz*, supra, 167 Conn. App. 426, quoting *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 125 n.26, 956 A.2d 1145 (2008).

During oral argument, the plaintiffs made one passing reference to "plain" or "fundamental" error. We conclude that relief under the plain error doctrine would not be appropriate in this case. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . [T]he plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Guzman* v. *Yeroz*, supra, 167 Conn. App. 427. After a thorough review of the record and the plaintiffs' challenges to the court's direction of a verdict, we see nothing that would meet "this extraordinarily high standard." Id.

Also for the first time during oral argument before this court, the plaintiffs suggested that their claim implicated the constitutional right to a jury trial, and argued that they could only have waived their claim through an affirmative, on-the-record waiver before the trial court. Both this court and our Supreme Court have recognized that "it is well settled that arguments cannot be raised for the first time at oral argument." *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 328 n.20, 71 A.3d 492 (2013); *Vaccaro* v. *Shell Beach Condominium, Inc.*, 169 Conn. App. 21, 46 n.28, 148 A.3d 1123 (2016), cert. denied, 324 Conn. 917, 154 A.3d 1008 (2017).

———————————————